45 So.2d 398 (1950)
CHAVERS et ux.
v.
A. R. BLOSSMAN, Inc., et al.
Nos. 3228-3229.
Court of Appeal of Louisiana, First Circuit.
March 28, 1950.
Porteous & Johnson, New Orleans, for appellants.
Erlo J. Durbin, Denham Springs, Ponder & Ponder, Amite, for appellees.
Taylor, Porter, Brooks & Fuller, Baton Rouge, Reid & Reid, Hammond, for Capital Transport Co., Inc.
DORé, Judge.
This case arises out of a highway accident which occurred on U. S. Highway 190, *399 about one mile west of Walker, Louisiana. It is shown that on December 15, 1947, a tractor and tank trailer unit owned by Capital Transport Company, Inc., and being driven by its employee, Earl Gatlin, was proceeding from Baton Rouge, Louisiana to McComb, Mississippi, and that while heading east and arriving at about one mile west of Walker, Louisiana, the truck had a blowout and that thereupon, the truck driver pulled his truck over on the shoulder, allegedly as far as he could, and allegedly set out proper reflector flares and turned on all lights required by law in such an emergency. It is further alleged that he then went to call his company for assistance, and afterwards returned to his truck to await such assistance. The Capital Transport truck remained in the location where parked until 5:00 A. M. the following morning, when it was struck a very heavy blow from the rear by a truck and trailer unit owned by A. R. Blossman, Inc., and operated by its driver, Archie L. Beyers. As a result of the collision, the gasoline of the Capital Transport Trailer Unit became ignited and exploded and some overhead power lines of Gulf States Utility Company were severed by the heat of the extensive fire that followed. The accident occurred approximately 100 or 150 feet to the east of the home of Mr. and Mrs. Joe Chavers, located on the southern side and about 100 feet off the highway. Upon hearing the collision and explosion, Mr. and Mrs. Chavers came out of their home to the scene of the accident to ascertain what had happened and to see if they could be of any assistance to their neighbors or to the occupants of the trucks. They alleged that shortly thereafter, Mrs. Chavers, upon attempting to return to her home and while standing on a small bridge intersecting the land of petitioners on the south side of said highway, and the shoulder of said highway, where the wires of the Utility Company were burned and severed by the blazes, one said wire fell towards the ground and struck the right shoulder and breast of Mrs. Chavers, causing her to fall on and against the said bridge on which she was standing, resulting in a complete fracture of the lower third right fibula, or right leg; that as a result of said injury, Mrs. Chavers had to be taken to the hospital clinic of Dr. Melvin D. Robinson, where the fracture was reduced by Dr. Robinson and a plaster cast applied, which remained thereon for a period of two months thereafter; that as a result of said injury, petitioner for said period of two months, suffered severe pain and that she still suffers severe pains from the injury and will continue to so suffer; that the medical expense for her treatment was the sum of $33.00. The petitioners allege that the accident was caused by the negligence of the driver of the Blossman truck, particularly; (1) in driving a heavily loaded truck along a much travelled highway, at a reckless rate of speed without keeping a proper lookout; (2) in failing to see the Capital Transport Company's tank truck and failing to see the flares, and the lights on said tank truck; (3) in failing to keep the said Blossman Company truck under proper control. They allege that this negligence was the sole cause of the severance of the electric light wires which resulted in the accident sustained by Mrs. Chavers. They further allege that the doctrine of res ipsa loquitur applies, and that it is incumbent upon the defendant to show lack of negligence on its part. They further allege that Blossman Company at the time of the accident was covered by a liability insurance policy issued by Firemen's Fund Indemnity Company. Consequently, they sue the said Blossman Company and its insurer, claiming damages of $10,000.00 on behalf of Mrs. Chavers, $5000.00 for her pain and physical suffering and $5000.00 for her permanent injury, and $33.00 to be paid to Mr. Chavers for the medical expense.
In its answer, the defendants, A. R. Blossman Company and Firemen's Fund Indemnity Company, admit that the accident occurred, but deny all other material allegations of the petition, averring that its driver was free of any negligence in that the tank truck of the Capital Transport Company was parked in the lane of travel of the Blossman truck without flares and lights and that as their driver approached the said tank truck, being met with an on-coming car with bright lights, he was blinded and *400 that, consequently, he was unable to see the tank truck in time to avoid colliding into its rear. The defendants in effect blame the collision entirely on Capital Transport Company. They further aver "that there was no foreseeable causal relation to, or connection with the collision of the vehicles, to the cause of the injury alleged by plaintiffs. That if respondents are legally responsible for the chain of causation resulting in plaintiff's injury as a foreseeable consequence of the collision; that plaintiffs are equally chargeable with foreseeing the ultimate effect of the collision, and as such, their negligence, in failing to take any precaution for their own safety, was the direct and proximate cause of the alleged injury." The defendants further aver on information and belief that Mrs. Chavers fell while walking across a wooden bridge constructed of timbers so spaced as to serve as a cattle guard as well as a bridge, and, in effect, that it had no connection with the accident, but was due to her failure to properly observe where she was walking. In the alternative, in the event that the court should find respondents guilty of negligence, they plead contributory negligence on the part of plaintiffs in several respects, which summarized amounts to the allegation that they should have remained in their home, which was a safe distance from the collision, and should not have exposed themselves to the danger from which Mrs. Chavers allegedly sustained an accident.
The defendant Blossman Company also filed a petition setting forth that in view of the facts and circumstances of the collision, "It is equitable and proper that petitioners be allowed to make said Capital Transport Company, Inc., a party to these proceedings as a possible joint tort-feasor for same would not and does not in any way prejudice the plaintiff's case, but in fact inures to the benefit of plaintiffs herein.
"Plaintiffs have not waived their right to an action against Capitol Transport Company as a joint tort feasor and liable `in solido' which (with) your petitioners (petitioner), but to avoid a multiplicity of suits and to enforce the legal and equitable rights and obligations respectively of petitioner and Capitol Transport Company, Inc., and that said Capitol Transport Company, Inc., as a joint tort feasor is a necessary and proper party in these proceedings."
Blossman Company further shows that in the event of any recovery against it, the judgment should be in solido against it and said Capital Transport Company.
The aforesaid petition of A. R. Blossman Company was met with an exception of no right and no cause of action by the Capital Transport Company, and reserving its rights under the exceptions, the said Capital Transport Company filed an answer admitting that the driver of its tank truck was its employee, operating in the course of its business, and admitting that at the time of the collision the truck was parked partly on the highway, the right wheels resting on the shoulder and the left wheels two or three feet from the southern edge thereof. It also admits in its answer that the tank truck was parked as aforesaid from about 6:00 P. M., December 15, 1947, to approximately 5:00 A. M., December 16, 1947. It admits in the answer, that its driver was asleep in the cab of the car, but denies all the other material allegations of plaintiff's petition with reference to negligence of its truck driver, and positively avers that all necessary flares and lights were burning and clearly visible for a distance in excess of that required by law at the time of the collision, and that the accident was due solely and entirely to the carelessness, and negligent and unlawful acts of the driver of the Blossman truck.
This case, consolidated for the purpose of trial with the case of Capital Transport Company v. A. R. Blossman, the case of A. R. Blossman v. Capital Transport Company, and the case of Archie L. Beyers v. Capital Transport Company, all of the other cases also arising out of the same accident, proceeded to trial with reservation by the Capital Transport Company of its rights under the exceptions of no cause or right of action.
After trial of the case, for written reasons assigned, the trial judge rendered judgment in favor of Joe Chavers in the sum *401 of $33.00 and costs and in favor of Mrs. Chavers in the sum of $3500.00 with 5% per annum interest from date of judicial demand and costs, against the defendant A. R. Blossman Company, Inc., and Firemen's Fund Indemnity Company. The District Court further granted judgment in favor of Capital Transport Company and against A. R. Blossman, dismissing its demand to make Capital Transport Company a third party defendant and to hold it liable as a co-tort-feasor for one-half of the amount which A. R. Blossman might be condemned to pay unto plaintiff. The defendants A. R. Blossman and Firemen's Fund Indemnity Company have appealed. The plaintiffs have answered the appeal, praying that the amount of the award to Mrs. Chavers be increased to the sum of $10,000.00 as originally prayed for.
A review of the voluminous record leads us to the inevitable conclusion that the collision was caused solely by the gross negligence of Beyers, the driver of the Blossman truck. The testimony of Mr. Gatlin, driver of the Capital Transport truck, is to the effect that at about 6:00 P. M. of the evening before the collision, while driving east and having arrived at a point approximately one mile west of Walker, he had a blowout of one of his rear dual tires and that he thereupon pulled unto the shoulder as far as he safely could, and that upon stopping his truck and investigating the damage, he discovered that the other dual rear tire was also flat and that consequently, for that reason, and for the further reason that the shoulder was soft, he could not pull the truck farther unto the shoulder. However, he did everything else that he possibly could, including the setting of reflector flares and turning on the lights of his truck and trailer; that he thereupon had some one take him to a telephone so that he could notify his company and have them send him assistance, and upon receiving instructions from them to stay with the truck, he returned to it and remained in the truck until 5:00 A. M., the next morning, when the collision occurred. He admits that he slept off and on during the night, but woke up at various times and turned the motor on so as to heat the cab from the motor (it had no special heater). He further states that after he had been parked there some time he was checked by a State Highway Patrolman, who merely made him move a flare reflector further back, and in other respects, approved of his method of parking.
He is corroborated by the Patrolman and by several other witnesses and it is difficult to see what more he could have done in view of the emergency. The contention is made by the defendants Blossman Company and its insurer that the shoulder was wide enough to have permitted the moving of the tank truck entirely off of the highway, but, be that as it may, the large preponderance of the evidence is to the effect that this heavy tank unit, weighing some 50,000 pounds, with two flat tires, could not be moved.
The preponderance of the evidence also shows that Mr. Beyers, the driver of the Blossman truck, was travelling at a very high rate of speed. That fact is shown by the distance he had already travelled and the average speed he had to go to have covered that distance, and by the further fact that he knocked the heavy Capital Transport Company truck, having two flat tires thereon, a distance of twenty-one feet into the ditch on the south side of the highway.
It is well established that proper flares were present and that the truck was well lighted and could be seen at a distance of at least 600 feet to the rear by any one keeping a proper lookout. Patrolman Duson Hoover stated that in the night before the collision he tested the visibility of the flares and lights by driving both from the rear and from the front, and that he was entirely satisfied that they gave safe warning to traffic from both directions.
In view of these circumstances, we fail to find any negligence on the part of the driver of the Capital Transport Company truck and must blame the collision entirely on the driver of the Blossman truck. True, he tries to excuse himself by saying that he was blinded by the bright lights of an on-coming car, but there is no proof to that effect, and, moreover, since he should have *402 seen the flares and lights of the tank truck at a distance of some 600 feet and should have been on his guard and slowed down to a safe speed, that excuse is a very lame one.
Being satisfied that the actual collision was caused by the Blossman driver, the next question to consider is whether or not it was the proximate cause of the accident sustained by Mrs. Chavers. It is admitted that she did sustain an accident by falling on a bridge, resulting in the alleged injury. The evidence clearly shows further that as a result of the collision and the consequent fire and explosion the overhead power line wires of Gulf Utility Company were severed, and the testimony of Mrs. Chavers to the effect that she was struck by one of these severed wires while she was standing on the bridge, is well corroborated and it follows that we must conclude that her falling on the bridge was caused by being so struck.
Even so, the defendants contend that "the loss or injury sustained by Mrs. Chavers is not one which gives rise to an action in damages against defendant Blossman for the loss or damage sustained is not one which is a direct result of the negligent act of the manner of operation of the Blossman truck as complained of by plaintiff, and does not follow the natural ordinary sequence from such act, but is merely a possibleas distinguished from natural and probableresult of the negligent operation of the vehicle, and accordingly, recovery under those circumstances will not be allowed." Citing the case of Cone v. Inter County Telephone and Telegraph Company, 40 So.2d 148, a Florida case.
That is not the law in this state. The law of this state is well set forth in the case of Lynch v. Fisher et al., La. App., 34 So.2d 513, 518, and from which we quote the following:
"We think it is well established that the general doctrine of foreseeability is not applicable to the extent of relieving one who sets in motion, through the agency of the negligent act, a chain of circumstances leading to the final resultant injury. In Payne v. Georgetown Lumber Co., Ltd., 117 La. 983, 42 So. 475, 477, the Court said: `That the particular injurious consequence was "improbable" or "not to be reasonably expected" is no defense. Wharton, Law of Negligence (2d Ed.) § 77. The same writer says:
"`The fact is, that the consequences of negligence are almost invariably surprises. A man may be negligent in a particular matter a thousand times without mischief; yet, though the chance of mischief is only one in a thousand, we would continue to hold that the mischief, when it occurs, is imputable to the negligence.'"
It may be noted in connection with this question, that it is stated in 38 Am.Jur., page 709: "It appears that the modern trend of judicial opinion is in favor of eliminating foreseeable consequences as a test of proximate cause, except where an independent, responsible, intervening cause is involved. The view is that once it is determined that a defendant was negligent, he is to be held responsible for injurious consequences of his negligent act or omission which occur naturally and directly, without reference to whether he anticipated, or reasonably might have foreseen such consequences."
It is our opinion that under our law, the gross negligence of the Blossman truck driver must be considered as the proximate cause of the injury sustained by Mrs. Chavers for the reason, as stated by the trial judge, "the chain of circumstances from the collision to the igniting and burning of the truck and electric line which fell across Mrs. Chavers' shoulder, was one continuous chain of unbroken circumstances."
Having reached the conclusion of the sole proximate cause of the collision and resulting injury of Mrs. Chavers, it is hardly necessary to even discuss the petition of the defendants seeking to make Capital Transport Company a codefendant in this case on the ground of being a joint tort-feasor. Since there is no negligence shown on the part of Capital Transport Company, it could not possibly be a joint tort-feasor. However, conceding, for the mere sake of argument, that the driver of *403 the Capital Transport Company was guilty of negligence constituting a proximate cause of the collision, under the law of Louisiana, the plaintiffs, and the plaintiffs only, had the right of determining whether or not it should be made a party defendant in the case. As between joint tortfeasors, a plaintiff has the right to sue any one or all as he sees fit. This question is well set forth in the brief of Capital Transport Company as follows: "The alleged `petition' of A. R. Blossman, Inc. in this case presents a bald case of attempter third party practice in the State Courts of Louisiana. That such procedure is entirely without procedural or substantive authority is elementary. In Louisiana there is no right of contribution between joint tort feasors until and unless they have been cast together in judgment in solido. This was very clearly established in the leading case of Quatray v. Wicker et al., 178 La. [289] 290, 151 So. 208 (1933). The Court in the Wicker case ably distinguished the earlier case of Sincer v. [Heirs of] Bell, 47 La.Ann. 1548, 18 So. 755, (1895), very carefully pointing out that the earlier case was authority only for the rule that one joint tort feasor compelled by a judgment to pay damages can not enforce contribution from another joint tort feasor who was not judicially compelled to pay damages with him. If there was any conflict between the holding in the Sincer case and in the Wicker case, such was eliminated by the Court in Æ Life Insurance Company v. De Jean, 185 La. 1074, 171 So. 450 (1936). There the Court held that one of two tort feasors (or his insurer) who alone has been sued by an injured party, and who has paid the judgment rendered against him, does not have any right to demand contribution from his joint tort feasor who was not sued by the injured party. This, even though it had been judicially determined that the second joint tort feasor was negligent in a companion case in which the said second joint tort feasor's own claim for damages was rejected due to his contributory negligence in the same accident."
It is our conclusion that the judgment dismissing the demand of defendant Blossman Company against Capital Transport Company is entirely correct.
On the quantum of damages, we feel that the award of $3500.00 to Mrs. Chavers is excessive by the amount of $1000.00. Her injury consisted of a simple fracture of the left fibula and she was treated in a routine manner by the application of a plaster cast for a period of some five weeks, the medical expense being only in the sum of $33.00. There was no complication at all during the treatment and there is no showing that she has sustained any permanent injury, although her doctor states that she may suffer discomfort, being a woman in her fiftys, especially during inclement weather. In its brief, the defendants call attention to the case of Blackburn v. Chenet, La.App., 42 So.2d 288, wherein plaintiff suffered from a fracture of the shaft of the tibia and fibula at the junction of the middle and lower third of the right leg, which had become one-half inch shorter than the left, and which caused plaintiff to walk with a limp. He was treated at Charity Hospital and remained in bed for about two and a half months, used crutches for about six months, and afterwards used a cane, the leg having been in a cast for about five months. The plaintiff was thirty-four years old and prior to the accident, was earning from $30.00 to $35.00 per week. In that case, the Court thought that an award of $3500.00 would do substantial justice. The case at bar, it seems to us, aside from consideration of her age, from a standpoint of quantum, is weaker than the cited case. We are of the opinion that an award of $2500.00 will do substantial justice.
For these reasons assigned the award made by the trial judge in favor of Mrs. Floye Chavers, wife of Joe Chavers, is reduced from the amount of $3500.00 to $2500.00, and as thus amended the judgments appealed from are affirmed. Costs of this appeal to be paid by plaintiff, Mrs. Floye Chavers, and all other costs to be paid by defendants.