' TALIAFERRO, Judge.
Plaintiff, while driving his automobile westerly on the Military Highway that leads from Camp Livingston, a few miles north of the City of Alexandria, Louisiana, to United States Highway 165, that courses northerly and southerly, collided, with the end of a building that was upon a stationary trailer belonging to the defendant, Robert B. Dixon. The collision occurred about 9:00 o’clock, P.M., March 26, 1948.
Plaintiff sued Dixon and his insurer, Great American Indemnity Company of New York, to recover an amount in damages to his car and an amount for physical injury to himself.
The defendant, Dixon, at the time and prior to the accident, was engaged in hauling from Camp Livingston buildings that had heen purchased by various persons. For this purpose he operated trucks with long trailers. The buildings were jacked up and placed on top of the trailers, then moved. The building involved herein was forty-three (43) feet long and twenty-five (25) tfeet wide; and with the truck, covered sixty-five (65) feet of the road. It was, in reality, only half of the original building which was too long to be removed as a unit by truck. It had 'been cut into two parts. The open end faced plaintiff.
After the building, above described, was loaded onto the trailer, it was driven over the Military road and parked thereon at about 5:00 o’clock P.M., one hundred five (105) feet from its intersection with U. S. Highway 165. The road was surfaced with a black-top twenty-four (24) feet wide. The truck and trailer occupied all of the right (north) half of the black-top, and extended over upon the gravel shoulder about the same distance. This position forced traffic in each direction to travel over the south half of the black-top and the adjoining wide shoulder.
Plaintiff and one Bill W. Grice were employed near the City of Lake Charles, Louisiana, and left there in the car for their respective homes near the Camp, the evening of the accident. Plaintiff lived on U. S. Highway 165, while Grice’s home was situated on the Military road, close to the Camp. Grice drove the car to his own home, passing the loaded truck and trailer, got out, and there plaintiff took the wheel and began the trip back toward U. S. ■ Highway 165‘. The collision then occurred. Plaintiff’s car collided violently with a large timber sixteen by eighteen (16 x 18) inches, upon which the left side of the building rested. At the time of the accident the truck and trailer were unattended.
The collision and its consequences are accredited to the négligence of Dixon in the following respects, viz.:
Failure to place flares or other warning signals to apprise the traveling public of the presence of the hazard to travel created by the stationary truck, trailer and building; failure to1 leave fifteen (15) feet clearance on the road; failure in general, to observe the laws, rules and regulations *109 pertaining to the safe operation of motor vehicles upon the public highways of the state, etc.
Defendants deny that the accident happened because of any negligence on Dixon’s part; and, on the contrary, charge that to plaintiff’s own negligence should it be ascribed. Amplifying, they allege that plaintiff knew (having passed same a few minutes prior to the collision) of the presence of the building on the road, and as he was well acquainted with the locale, should have known that he • was nearing the intersection; that hi's car was traveling forty miles per hour when the collision occurred, an excessive speed under prevailing conditions and circumstances; that had he kept proper look-out and observed the degree of care and caution the conditions on the road demanded, the accident would not have happened; that the parked trailer was equipped with reflector lights visible to a motorist approaching from the rear, and, in addition, Dixon had placed reflector flares in front of and behind the trailer, as required by law; all of which reflectors should have been seen by plaintiff, as he approached the scene of the accident; that there was ample space left on the road for traffic each way to pass; that Dixon was forced, under the rules of1 the Department of Highways to leave the building at the intersection and not drive same upon the highway until midnight, at a time when traffic thereon was very light.
Pleading in the alternative, defendants allege that plaintiff’s own negligence in the named respects contributed to the accident and was a proximate cause thereof and such negligence is pleaded in bar of recovery by him.
The demand of the plaintiff was rejected and his suit dismissed at his cost.
Plaintiff and Grice both testified that they did not see the building as they passed it only a few minutes before the accident. This approaches the inconceivable. How anyone in a motor vehicle could pass within a few feet of this long string of large objects and not see same, seems impossible. This testimony is flatly contradicted by written statement of plaintiff, given the insurance investigator a few days subsequent to the accident. In this statement, he declared, viz.: “When 'we turnéd 'into the Camp Livingston Road from PIighway'165, Mr. Grice, who was driving, called my attention to a house that was parked in the road. I looked back at the house and nothing more was said about it. I saw that it was parked on the north side of the road and was blocking the north side.”1
He added: “I forgot about the house being parked there.”
Plaintiff admits that he read the statement and 'freely signed each page of it. He further stated that the investigator came to his home, asked him “how the accident happened” and that he wrote the statement as plaintiff related the facts to him. Plaintiff made no serious effort to deny lack of knowledge of the contents of the statement when he signed it. It was contrary to his interest. We are forced to the conclusion that the statement correctly reflects the true facts.
Plaintiff testified that the brilliance of the headlights of an on-coming car, together with the open end of the building, made it impossible for him to see the building until too close to it to stop his car. In so testifying, he virtually destroys his asserted right to hold Dixon responsible for the accident.
East of the parked truck and trailer, some seventy (70) yards, there is a rise in the Military road. Plaintiff testified that as he reached the apex of this rise and started down the tangent toward the building he observed the bright lights of a car that turned from U. S. Highway 165. While he says he reduced his speed some because of these bright lights, -it is obvious he. had ample time 'and distance to have retarded his speed to a minimum, or, even brought the car. to stop, until the other vehicle passed, as the law required of him under the circumstances. He was traveling at a speed of nearly forty (40) miles per hour when the collision occurred.
The driver of the approaching car testified that he observed plaintiff coming down the tangent at a rapid speed about the' time he (the witness) was beside "the truck, and realizing that plaintiff would *110 need the entire width of the south half of the black-top to pass, pulled his own car entirely therefrom and upon the shoulder and switched off his lights; that he continued to drive forward (on the shoulder) until the cars passed each other; that immediately thereafter he heard the noise from the impact, stopped his car about fifty (50) feet therefrom, got out and assisted in extricating plaintiff from his own car.
While Dixon and an employee testified that flares were placed on the road behind the trailer and in front of the truck, none were found there after the accident. It is true that there was a reflector affixed to the end of the sixteen by eighteen (16 x 18) inch timber which plaintiff should have seen in time to stop his car, or to have brought it to such reduced speed that it could have been stopped almost instantly, if need therefor arose.
It is also true that Dixon did not allow fifteen (15) feet clearance on the black-top, south of the trailer and building, but we are unable to perceive wherein this omission of duty contributed to' the accident. It would have occurred even though fifteen (15) feet space had been allowed. Neither do we believe that the absence of flares, if such be true, played any important part in the near tragedy.
The height of the building is not shown. It must have been at least twelve feet. Anyway, its open end together with exposed timbers within, and large timbers upon which it rested, near the center of the road, surely presented such a barrier to traffic that by the exercise of ordinary care would have been observed.
The general rule, firmly established by the jurisprudence of this state, is that when a moving vehicle collides with an immobilized object on a highway, recovery is not allowed the operator of the moving vehicle because no one should drive a motor vehicle in the night time at such rate of speed that it cannot be stopped within the distance illumined by its headlights. There is a line of cases that announce exceptions to this rule, stemming from Gaiennie v. Cooperative Produce Company, et al., 196 La. 417, 199 So. 377, relied upon by appellant, but we are clear in the opinion that the facts of the present case place it without the purview of the Gaiennie case and those which follow it.
It seems reasonably free of doubt that plaintiff in his hurry to reach home, after an absence of a week or more, as he said in the statement, forgot about the building being on the road, and drove heedlessly into it. Clearly, his own negligence in this respect and others mentioned herein, made possible the accident.
For the reasons herein assigned, the judgment from which appealed, is affirmed with costs.