51 So.2d ·795

CAPITOL TRANSPORT CO., Inc. v. A. R. BLOSSMAN, Inc., et al.

No. 39571.

Feb. 12, 1951.

Rehearing Denied March 19, 1951.

Porteous & Johnson, New Orleans, for defendants-appellants.

Reid & Reid, Hammond, for plaintiff-appellee.

McCALEB, Justice.

This is an action ex delicto, for the recovery of the value of a large tractor and tank-trailer unit which was destroyed on

December 15, 1947, when it was struck from the rear by a truck and trailer unit owned by A. R. Blossman, Inc., while it was parked on Highway 190 near Walker, Louisiana. Capitol Transport Company Inc., owner of the unit, sued for $3,215.88, representing the combined value of the trailer and tank, gasoline (ignited and destroyed) and other expenses incurred and Pearl Assurance Company, Ltd., its insurer and subrogee, intervened for $4,130.56, being the amount it paid plaintiff under a policy insuring the tractor against collision. Recovery is sought against the defendants, A. R. Blossman, Inc. and its insurer, Fireman's Fund Indemnity Company, on the ground that the accident was attributable solely to the negligence of the driver of the Blossman truck in running into the rear of the parked vehicle.

The defense to the suit is that the operator of the Blossman truck was without fault as the Capitol truck-trailer was illegally parked, unlighted and without any warning flares in the rear thereof, and could not be seen by him as he approached because he was blinded by the brilliant lights of a ve-hicle coming from the opposite direction. In the alternative, defendants pleaded the contributory negligence of plaintiff and its truck driver specially averring that it was imprudent to allow the large gasoline truck-trailer to remain on the highway in a disabled condition for twelve hours (the interval between the parking of the unit and the accident); that it could and should have been driven upon the adjoining shoulder of the road and also that it was parked without lights, flares, reflectors or similar warning devices required by law.

After a trial [1] on the foregoing issues, there was judgment in favor of plaintiff and intervenor, as prayed for. Defendants have appealed.

 U.S. Highway 190 is a much travelled two-way concrete thoroughfare between Baton Rouge and Hammond. The roadway in the vicinity of the accident (west of Walker) is practically straight, 18 feet in width and bordered on each side by a grass covered shoulder approximately level with the concrete for several feet but gradually declines to a low area or ditch. The south shoulder of the road, which was available

---

1. The case was consolidated for purposes of trial with that of Chavers v. A. R. Blossman, Inc., La.App., 45 So.2d 398, which was a suit by Mrs. Chavers for personal injuries she received when she was knocked down by an electrically charged overhead power line which had been severed by fire caused by the ignition and explosion of gasoline as a result of the collision. Damages were awarded her by the District Court and the judgment was affirmed by the Court of Appeal for the First Circuit, that court being of the opinion that the accident was occasioned by the fault of the driver of the Blossman truck and that Capitol Transport Company, Inc. was without negligence in the premises. See 45 So. 2d 398. We agree with the Court of Appeal that the driver of the Blossman truck was negligent but the holding that the Capitol Transport Company, Inc. was without fault was purely gratuitous as it had not been joined by Mrs. Chavers as a party defendant.

to the driver of the Capitol tractor-trailer for parking purposes, is broad enough under normal circumstances and weather conditions to readily accommodate the entire vehicle, judging from pictures taken of the scene several months after the accident.

On the day before the accident, the Capitol truck-trailer loaded with several thousand gallons of gasoline, was travelling from Baton Rouge to McComb, Mississippi. About one mile west of Walker the unit had a blowout on the outside tire of one of the right dual wheels. This occurred between sunset and dusk, which the driver of the truck-trailer, one Gatlin, estimates to be about 6:30 p.m.[2] Gatlin states that, upon realizing that he had a blowout, he stopped the unit and went out to examine the tire as he was hoping that he could continue on into Walker; that, when he made an inspection, he discovered that the tire adjacent thereto was rapidly losing air; that, being thus apprised of his inability to continue on, he drove the unit partially onto the shoulder of the road placing the five wheels on the right side approximately three feet on the shoulder leaving the balance on the concrete roadway (the truck-trailer being over seven feet in width); that he thereupon placed reflectors to the front and rear of the vehicle and hitched a ride into Walker where he reported the facts by long distance telephone to his employer's office in McComb; that he was told

that new tires would be sent and was instructed by the office to return and remain with the truck; that, accordingly, he returned to the truck about 7:30 p.m.; that, shortly thereafter, the highway police came and directed him to clean the reflectors, which were dusty, and place them at a distance of 100 feet to the rear of the vehicle and that, after the police left, he entered the cab of the trailer, turned on the lights and started the motor, which he kept on most of the night to provide him with heat as the weather was cold. At five o'-clock the next morning, the collision occurred.

The version of the operator of the Blossman truck is that he was driving along at approximately 35 miles per hour on a return journey from Houston, Texas to the Blossman place of business at Covington, Louisiana; that, just before he reached Walker, he was blinded by the glaring headlights of an automobile travelling west; that he did not see the parked Capitol unit in the road until he was about 12 feet from it; that there were no flares or other lights to warn him of its presence and that, at the time he discovered it, it was too late to avoid the collision despite application of his brakes and swerving to the left in the sudden emergency.

The testimony of defendant's driver that he was travelling at only 35 miles per hour is not impressive as it is shown by other

---

2. We believe that he is in error in his statement as the sun in December sets nearer 5:00 p.m.

evidence that the blow administered to the Capitol truck-trailer was so violent that it was propelled forward for over 20 feet before it came to a stop. When it is considered that this large vehicle, loaded with gasoline, weighed approximately 50,000 pounds, it is evident that defendant's driver must have been travelling at a high rate of speed in order to move it that distance in its disabled state. Accordingly, we concur in the ruling of the trial judge that defendant's driver was at fault.

Albeit, the paramount issue in the case is whether plaintiff was guilty of contributory negligence. This negligence is said by defendants to exist in three particulars— (1) absence of reflectors or flares to the rear of the disabled vehicle at the time of the accident, (2) failure of plaintiff's operator to remove the unit entirely off the highway by driving it onto the adjacent shoulder and (3) allowing it to remain on the highway for almost 12 hours when a legal duty was imposed to remove it as soon as possible.

Although there is considerable conflict in the testimony, we are not prepared to say that defendants have established that the driver of the Capitol truck failed to maintain reflectors or other similar light warning devices for the protection of traffic, as required by Act No. 164 of 1936, as amended by Act No. 215 of 1942, LSA–RS 32:442 et seq. Two State highway patrolmen testified that the reflectors used by the driver were dusty but that they had him clean them and place them in proper posi-

tions, one of these officers stating that he later passed by the unit, checked the reflectors and found them to be all right. This officer also approved the driver's action in parking the unit partially on the highway.

As to this latter question, i.e., the place where the truck was parked, we have considerable doubt. Under subdivision (c) of Rule 15, section 3, of the Highway Regulatory Act, Act No. 286 of 1938, LSA–RS 32:241, subd. B, which is applicable to disabled vehicles, it is provided that: "* * it shall be the duty of the owner or driver of any such vehicle to remove the same as soon as possible and until removed to protect traffic from same at his responsibility." Obviously, if the operator had a safe place on the shoulder onto which the cumbersome unit could have been driven, it was his duty to take it off the highway and thereby avoid the resultant traffic hazard. And it cannot be doubted that there was ample space on the adjacent roadway-shoulder to accommodate the entire large vehicle. However, the driver claims that it would have been unsafe for him to take the unit completely off the concrete because the earth of the shoulder was soft and he was fearful that it would overturn. His evidence is corroborated on this score by testimony to the effect that it had been raining for several days prior to the accident and that the shoulder of the road was somewhat soft. Then, too, we must take into account that the State Highway patrolmen, who came to the scene shortly after the vehicle had be-

come disabled, had an opportunity to inspect the manner in which it was parked and apparently approved it. It is to be presumed that, if these officers believed that the shoulder of the road was solid enough to support the vehicle, they would have ordered Gatlin to remove it entirely from the concrete pavement.

 Viewed in the light of these circumstances, it cannot be said that defendants have proved with certainty that the driver was derelict in not removing the vehicle from the roadway. But this does not mean that plaintiff is blameless for—conceding that it was permissible for Gatlin to park the disabled vehicle partly on the roadway under the attendant conditions, it was nonetheless encumbent upon plaintiff to cause its removal from the highway "as soon as possible" under the mandate of the law above referred to. The only trouble encountered by the vehicle was a blowout and puncture on its right rear dual wheel. This is not the type of disability that would ordinarily require a period of 12 hours to remedy. Yet, plaintiff offered no evidence to show that the unit could not have been removed from the highway within a reasonable length of time after it was crippled. The only testimony on this feature of the case is given by Gatlin, the driver. He states that, as soon as he parked the truck-trailer and put out the reflectors, he went into Walker and telephoned the company's office in McComb and that he was informed to remain with the vehicle as tires would be sent. But, as to when the tires would be

sent or what efforts were made to obtain them, the record is silent. It is manifest that plaintiff's officers and employees were charged with knowledge that the large, disabled unit containing inflammable substances parked on the highway, particularly at night time, was an imminent danger to all traffic and persons and property within its vicinity and that it was imperative that special efforts be made for its speedy removal. Apparently, however, those in charge of plaintiff's affairs were utterly heedless of the traffic hazard created by the vehicle and failed to act with dispatch. This omission was violative of the Highway Regulatory Act and is to be regarded as negligence which had causal connection with the ensuing accident.

The judgment appealed from is reversed and it is now ordered that the claims of plaintiff and intervenor be dismissed at their costs.