76 So.2d 548 (1954)
Ralph E. KING, Plaintiff-Appellant,
v.
RISDON & W. E. HOLOMAN LUMBER COMPANY, Inc., et al., Defendants-Appellees.
No. 8162.
Court of Appeal of Louisiana, Second Circuit.
December 1, 1954.
Rehearing Denied January 4, 1955.
Writ of Certiorari Denied February 14, 1955.
*549 Thompson, Thompson & Sparks, Monroe, for appellant.
Theus, Grisham, Davis & Leigh, Monroe, for appellees.
GLADNEY, Judge.
This is an action for damages for severe injuries sustained by Ralph E. King, Jr. on the night of January 26, 1950, when the automobile driven by him crashed into the rear end of a truck loaded with lumber stopped in the highway lane in which King was traveling. The defendants are Risdon & Holoman Lumber Company, Inc., the owner of the truck, and its insurance carrier. The suit was initially brought by Dr. R. E. King as an individual and as tutor for his minor son, Ralph E. King, Jr., but prior to this appeal the minor was emancipated, proper substitution was entered of record, and the appeal perfected by Ralph E. King, Jr.
Plaintiff alleges Holoman, the driver of the truck was negligent on numerous counts based on infractions of the Louisiana Highway Regulatory Act, all of which defendants stoutly deny and in the alternative, plead contributory negligence of the automobile driver as a bar to recovery.
After a trial, judgment was rendered rejecting the demands of plaintiff. Only young King has appealed.
Jack Holoman, the driver of the truck and trailer, a short time before the accident had departed from the filling station of Mark H. Bonner, located in Winnsboro, after having serviced his truck and was proceeding northward along State Highway No. 15, en route to Shongaloo, Louisiana. The truck was heavily loaded with wet lumber which extended approximately four feet beyond the rear wheels of the truck.
The accident occurred after dark about 8:30 o'clock p. m. on Louisiana Highway No. 15, about a mile north of the corporation limits of the Town of Winnsboro. The highway at that point is of concrete paving eighteen feet in width with shoulders each eight and one-half feet wide. A black line runs down the center of the pavement. The highway northward from Winnsboro and beyond the scene of the accident is straight and level. The record shows that earlier there had been a hard rain but according to the preponderance of the evidence at the time of the collision the atmosphere was clear and visibility reasonably good.
After the truck was serviced at Bonner's station Holoman testified that in turning the truck while leaving the filling station the air hose connection to the trailer brakes was pinched by a slab of lumber which shifted up close to the cab and permitted the air in the hose to escape. Repairs were then made. He explained that the trailer was equipped with vacuum brakes and a safety device which caused the brakes to apply automatically whenever the hose broke or the air escaped. As soon as he completed the necessary repairs to the hose he continued on his way and had reached the scene of the ensuing accident when the truck suddenly stopped due to automatic application of the safety device. Holoman said he realized that the trouble was due to air escaping from the hose and which *550 he believed could be fixed within a few minutes by simply tightening a clamp on the hose. Without turning off his lights he took his flashlight and a combination pocket knife and screw driver and tightened the connection in a short time, which he estimated to be a minute and one-half, and when he had done this, he heard the brakes release themselves and knew the repair was successfully made. As he alighted from the trailer after fixing the air hose Holoman observed a motor vehicle approaching from the north and another from the south. He took his flashlight and flagged the closer southbound car whose driver turned out to be J. L. Hodges. As soon as he noticed the driver of the southbound car had observed his warning, he moved some thirty feet behind his truck and began to flag the vehicle approaching from the south. The car driven by Hodges continued on and while a short distance away met the vehicle coming from the south. The latter proved to be the automobile which was driven by Ralph E. King, Jr. Despite the flashlight flagging of Holoman, the northbound automobile continued to approach rapidly and Holoman was forced to jump into the highway ditch in order to avoid being run over. The momentum of King's Studebaker automobile caused it to be driven up underneath the protruding lumber of the truck. J. L. Hodges heard the collision and immediately backed his truck up. In a short time thereafter Dr. R. E. King, proceeding on a professional call to Archibald, Louisiana, came upon the wreck and stopped to render medical assistance, only to find his son gravely hurt and his two companions fatally injured.
There is ample corroboration of the testimony of Holoman. Ralph King testified that when he was about seven hundred feet south of the locus of the accident he observed a car, which he said had passed him, swerve to the left as if avoiding something in the highway, and when he came closer to the truck he saw someone waving a flashlight. Dr. King also testified he observed someone waving a flashlight. We think Holoman's testimony that two red clearance and a bracket of three red lights all visible from the rear of the truck, is amply substantiated by the testimony given by Trooper McCain, Mark H. Bonner and A. N. Swelley. Though Hodges, Ralph King and Dr. King said they did not notice the rear end lights, only Ralph King was in a position to say the tail lights were not visible prior to the collision. Hodges said he did not notice the lighting on the rear end of the body of the truck because he did not look. He stated candidly he was not looking for them and, of course, his testimony is understandable as he was very busy trying to get the injured boys from the wreck and render all help possible. Of course, when Dr. King realized his son and his son's friends were involved he concentrated his attention upon giving medical assistance. Trooper McCain testified when he arrived on the scene two red clearance lights were burning, one on each upper end of the rear of the truck, and he expressed the opinion those lights would be visible to the rear for a distance of five hundred feet. He observed also three red lights on the rear end of the truck which were damaged and were not burning after the collision. He stated these were hanging on the trailer and consisted of three lights in a bracket and had apparently been broken in the wreck. The headlights on the truck also were burning. Mark H. Bonner and A. N. Swelley, Bonner's employee, who gassed up the truck just before it left the Bonner filling station, both testified they saw lights burning on the rear of the truck consisting of two red clearance lights and three red lights.
By way of summary the various charges of negligence so specifically enumerated by plaintiff can be comprehended in three principal charges of negligence, each of which is denied by respondent. The charges are: (1) Parking an overloaded truck and trailer on the paved portion of the highway without leaving fifteen feet of clear and unobstructed passage when it was practicable to park the vehicle on the shoulder; (2) the failure to have rear end lights on the trailer and on the lumber as prescribed by statute; and (3) failure to *551 set out flares. The defense rests upon a denial of any act of negligence and the assertion young King was guilty of contributory negligence by excessive speed and not maintaining a proper lookout.
We have reached a firm conclusion that the paramount issue in the case is whether plaintiff was guilty of contributory negligence. Any motorist when traveling at night on the highways of Louisiana must be governed by the two cardinal regulations of the Highway Regulatory Act which requires: (1) that the driver of the motor vehicle operate it at a reasonable and proper speed under the circumstances and not so as to endanger the persons or property of others, and (2) that the vehicle must be equipped with headlights, which under normal atmospheric conditions, and on a level road, will produce a driving light sufficient to render clearly discernible a person two hundred feet ahead. LSA-R.S. 32:227, 32:301.
In their application of the foregoing regulations the courts of this state have formulated and repeatedly given effect to the general rule that a motorist will be held to have seen an object, which, by the use of ordinary care and prudence, he should have seen in time to avoid running into it, and the driver of an automobile is guilty of negligence in driving at a rate of speed greater than that in which he can stop within the range of his vision. See: Louisiana Power & Light Co. v. Saia, 1937, 188 La. 358, 177 So. 238; Gates v. Arkansas & L. M. R. Co., La.App., 1938, 180 So. 835; Meaux v. Gulf Ins. Co., La.App., 1938, 182 So. 158; Domite v. Thompson, La.App., 1942, 9 So.2d 55; Boland Machine & Manufacturing Co. v. Highway Ins. Underwriters, La.App., 1945, 22 So.2d 307; Odom v. Long, La.App., 1946, 26 So.2d 709; Woodall v. Southern Scrap Material Company, La.App., 1949, 40 So.2d 495; Dauzat v. Kelone, La.App., 1953, 65 So.2d 924.
In discussing the foregoing rule, which obliges a motorist to reduce his speed and control his car so that he can stop within the distance in which he can plainly see an obstruction, the Supreme Court in Gaiennie v. Cooperative Produce Co., Inc., 1940, 196 La. 417, 199 So. 377, 379, said:
"The difficulty in laying down a hard and fast rule is that the act provides that the conditions and circumstances must be considered as well as the traffic, surface and width of the highway, and the location of the neighborhood. Such being the case, the particular facts of each case must be considered in arriving at a conclusion, and it would not be safe to lay down a hard and fast rule for that reason."
And this court through Judge Taliaferro in Hogue v. Akin Truck Line, La.App., 1944, 16 So.2d 366, 368, observed:
"In each of the cases wherein the driver of the moving vehicle, which ran into a stationary one, was absolved from negligence as to contributing cause of the collision, the conditions that superinduced the accident were unusual, exceptional. They were not to any extent the result of the moving motorist's failure to reasonably perform every duty imposed by law."
The unusual conditions and exceptional circumstances referred to which go to form exceptions to the general rule above stated are such that even with the exercise of ordinary prudence and care by the motorist an accident would more than likely occur. Cases falling in this group have been cited by counsel to support plaintiff's right of recovery. Thus Rea v. Dow Motor Co., La.App., 1948, 36 So.2d 750, was an action where plaintiff traveling at a speed of twenty miles per hour in the rain, ran into a parked military car without lights, which was olive green in color and a portion of it extended over the pavement; Carter v. Le Blanc Lumber Co., La.App., 1948, 37 So.2d 471, involved a truck loaded with logs moving at night on the paved highway without tail lights, clearance lights or flags; the truck driver in Capitol Transport Co., Inc. v. Blossman, Inc., 1951, 218 *552 La. 1086, 51 So.2d 795, was found guilty of contributory negligence in parking on the highway for a twelve hour interval a dangerous gasoline truck without flares and without making a special effort to remove it as required by LSA-R.S. 32:241, subdivision B, 32:442 et seq.; in Lovelace v. Gowan, La.App., 1951, 52 So.2d 97, defendant's vehicle, a trailer without truck or lights, and of the type known as a low-boy, having a flat bed no taller than its wheels, presented a type of construction difficult to observe when in range of a motorist's headlights; in Evans v. Kirby, La.App., 1951, 53 So.2d 412, there was involved a truck stopped in the highway with no lights whatsoever; facts similar to those in the preceding cases were involved in Columbia Fire Insurance Co. v. Black, La.App., 1952, 61 So.2d 534, where there were unusual weather conditions and the offending vehicle was without lights; and Simms v. Lawrence Bros., La.App., 1954, 72 So.2d 538, a decision by this court, turned upon the angular parking of a truck on the highway without lights, by an intoxicated driver.
It is clear to us that none of the foregoing cases present analogous facts such as now confront this court. King testified he was driving about fifty miles per hour and when close to the place of collision he met a car, the lights of which affected his vision, that he did not reduce his speed and was unable to see the truck in time to avoid the accident. Hodges testified he dimmed his headlights upon meeting King and that the latter did likewise. Trooper McCain measured the skid marks of King's car before it crashed into the trailer and found them to extend over a distance of one hundred feet.
We pretermit any discussion of the neg ligence vel non of Holoman because we are forced to the conclusion Ralph King was guilty of contributory negligence. The disabled truck with all lights burning was parked in the middle of the highway and its rear end lights should have easily been seen under the prevailing atmospheric conditions up to five hundred feet. Furthermore, King's speed should have been reduced upon meeting Hodges if his vision was affected by the lights of Hodges' car so he could have controlled the car within the range of his own headlights. The tremendous impact and the length of the tire marks constitute mute evidence the speed of the automobile was excessive and strongly implies the accident would not have occurred had the automobile driver been alert and had his vehicle under control. In instances of this kind recovery must be denied.
Goodwin v. Theriot, La.App., 1936, 165 So. 342; Louisiana Power & Light Co. v. Saia, 1937, 188 La. 358, 177 So. 238; Hemel v. United States Fidelity & Guaranty Co., La.App., 1947, 31 So.2d 38; McCann v. Dixon, La.App., 1951, 50 So.2d 107; Capitol Transport Co., Inc. v. Blossman, Inc., 1951, 218 La. 1086, 51 So.2d 795; Finley v. Guidroz, La.App., 1952, 58 So.2d 271.
We are convinced that Ralph E. King, Jr., was guilty of contributory negligence in failing to see the lights on the truck and in not reducing the speed of his automobile within safety limits, and that such negligence was a proximate, if not the sole cause of the accident. Accordingly in our opinion recovery should be denied and the judgment from which appealed will be affirmed at appellant's cost.