ELLIS, Judge.
This is a tort suit for personal injuries and property damage brought by' Oledaus Guillory, Jr., against Farmers Automobile Insurance Company, the liability insurer of an automobile owned by Eugene C. Hagerman. The petition recites that the accident, subject of this lawsuit, occurred solely through the negligence of the operator of the Hagerman car and the operator of another vehicle approaching from the opposite direction in which the plaintiff was traveling, one Bertile Manuel. However, the prayer of the petition does not join the operator of the Hagerman vehicle, Robert L. Thomas, but only Manuel and the insurer of the Hagerman vehicle. The suit as to Manuel, on motion of the plaintiff, was dismissed, leaving as the only defendant herein Farmers Automobile Insurance Company.
The lower court dismissed plaintiff’s suit and this appeal was entered.
This accident occurred in the early morning hours of March 30, 1958, in Evangeline *85 Parish. The plaintiff was driving an automobile in an easterly direction on Louisiana Highway No. 10. Just prior to the accident the speed of plaintiff’s automobile was approximately 55 miles per hour. At the same time an automobile owned by one Hagerman and operated by Robert L. Thomas was parked partially on the south shoulder of the highway and partially on its paved section in the eastbound or the traffic lane of the plaintiff. The rear of this automobile was projecting on to the highway about 3 or 4 feet and this Hager-man car was headed in a southerly direction. About the same time an automobile headed west approached the parked vehicle, and the evidence discloses that this vehicle, driven by Bertile Manuel, was slightly east of the parked Hagerman vehicle. The plaintiff’s car struck the parked vehicle, glanced off and struck the Manuel vehicle.
The highway at the situs of the accident is a regular 20 foot wide two lane, concrete surfaced roadway, with shoulders .■some 9 feet wide. The road is straight .and level; the weather was clear and ■dry.
There is some evidence that another automobile was stopped slightly west of the car operated by Thomas, but this car, if it was there, was driven away from the .•scene and its driver was never located. 'The evidence as to this car being present will be discussed later.
There is no doubt but there was negligence on the part of Thomas. He was using the Hagerman automobile to take his girl friend home. They had been at a night club some short distance from the scene of the accident. Thomas attempted to start the engine of the car but could not do so and with the aid of several friends this car was pushed along the highway in a westerly direction and finally the motor started. Thomas ran the motor for some 5 minutes and being under the impression it would continue running he began to turn the car around in order to travel back in .an easterly direction on the highway. In doing so he brought the vehicle he was driving across the paved portion of the highway and when he reached a ditch on the south side, a short distance off the paved portion, he brought the car to a stop. The motor died and, despite repeated efforts, he could not get it started, and the rear portion of the vehicle was projecting, as aforesaid, into the eastbound traffic lane. He certainly had knowledge of the fact the vehicle he was operating was not in good running condition and that its motor had stalled several times previously. The trial court concluded, and we agree, that there was no question but that he was negligent, under the circumstances, in causing the automobile to be parked in a position of peril.
Thomas did not appear at the trial and there is in the record only his ex parte statement, taken out of the presence of the plaintiff and his attorney, which was substituted for his testimony on the stipulation that he would, if present, testify substantially in accord with the statement on direct examination. In this statement Thomas placed another car, westbound, at the scene of the accident, which he said arrived shortly before the accident and parked on the north shoulder of the highway. Thomas stated the driver of that vehicle stopped to lend assistance. One of the passengers in the Manuel automobile testified there was a vehicle immediately in front of the Manuel car but the testimony of this witness is rather vague. Thomas also stated there was a hitch-hiker present at the time who was flagging traffic. This witness was never located. One of the occupants of the Manuel car testified she saw a man in the highway waving a flashlight, flagging traffic. This is the only mention of a flashlight and none of the other witnesses, including Thomas, mentions any flashlight whatsoever.
The Manuel car, driven by Mrs. Manuel, contained two guest passengers, Doris Green and Vela Soileau. Doris Green stated the Manuel car was still moving when it was struck by the plaintiff’s car. She did *86 not see the car which Thomas stated had stopped to lend assistance to him. Vela Soileau testified that just as she saw the parked Hagerman car the plaintiffs car struck it, while the Manuel car in which she was traveling, was still moving when it was struck. She said she saw another car ahead of the car in which she was riding but'she did not think it was stopped and she did not see it after the accident.
Mrs. Manuel, the driver of the Manuel car, was originally made a defendant. She was not subpoenaed, nor was her testimony presented at the trial. Apparently there was no effort made by the defendant to take the deposition of this witness. As she was driving the car and had apparently brought it almost to a stop upon seeing the Hager-man vehicle she evidently would have thrown some light upon the facts of this case, especially in view of the uncertain testimony of Doris Green and Vela Soileau.
The plaintiff testified he saw only one automobile near the scene of the accident and this was the car driven by Mrs. Manuel; that it was moving slowly when he glanced off the parked automobile and struck it.
The evidence as a whole indicates the first car, which Thomas stated had stopped to lend him assistance, had evidently traveled on to the west and was not near the parked automobile; and perhaps had traveled on in a westerly direction to turn around and return. No one places it at the scene of the accident after it occurred.
The evidence seems convincing that the parked Hagerman automobile had no headlights nor taillights burning and was a completely unlighted object protruding partially across the highway. The fact that the motor would not start until the car was pushed seems to indicate the battery was dead. It had stalled several times previously and no doubt the battery was too weak to energize its lighting system.
The plaintiff testified that when he was approaching the scene of the accident he was blinded a trifle by the lights of the Manuel car and he was very close to it when this car changed its lights either from bright to dim or from dim to bright, confusing him for a moment and affecting his vision. He further testified that it was just a second from the time his vision was affected until the time he struck the Hager-man car; that he did not have time to stop but that he did try to stop in the short seconds left to him. He applied his brakes-in an effort to avoid the accident but it was-too late.
The plaintiff further testified he never saw any one trying to warn him and had' no idea his traffic lane was blocked until' a few seconds before the actual impact.. While Thomas, in his statement, said he saw a man some 200 feet west of the parked car when the plaintiff’s car was approaching and that he called to him to flag the oncoming traffic, he further stated that a. friend of his picked up this hitch-hiker and' he intended to find out who he was, yet the defendant has not shown any effort to locate this person. Doris Green, one of the passengers in the Manuel car, testified that-she saw a man west of the Hagerman car flagging down traffic with a flashlight. As no one else saw this man and Thomas did’ not mention any flashlight or other warning, device in his statement, nor did he mention, it to the State trooper who investigated the accident, it was not proven that any one was giving any sufficient warning to the-plaintiff. Thomas stated he got out in the-road beside the car he was driving and' waved his hands over his head and that the person he mentioned got out in the road' and waved his hands also. Vela Soileau-stated she saw a man standing next to the-parked automobile but she does not mention-any flashlight at all.
Rooney McDaniel, the girl in the car with Thomas, stated she did not see anything and her testimony sheds no light upon-the facts of this case other than that the-automobile had stalled and was in the position on the highway as hereinabove-stated.
*87 The trooper, Fontenot, who investigated the accident, having arrived at the scene some IS minutes after the collision, testified that as far as he could determine the sole witnesses were Mrs. Manuel and the two passengers in her car, Rooney McDaniel, the passenger in the car Thomas was driving, Thomas and the plaintiff. Mrs. Manuel did not testify in any manner, the two passengers in her car testified rather vaguely and Rooney McDaniel added nothing of any value in her testimony. This leaves the court with the testimony of the plaintiff and Thomas. Thomas was clearly guilty of negligence in creating the peril and while the lower court found the plaintiff guilty of contributory negligence, we think, from the facts educed on the trial, this last finding is open to question.
In determining whether the plaintiff was contributorily negligent in failing to observe a stationary, unlighted vehicle obstructing his traffic lane in time enough to avoid striking it, no hard and fast rule can be laid down since, under Louisiana law, exceptions are recognized particularly where there is a collision with an insufficiently lighted vehicle negligently protruding into the right of way. The surrounding circumstances and facts in each case must be considered and exceptional circumstances may create a cause for the recovery of damages. See Thibaut v. Gibson, D.C., 90 F.Supp. 222, appeal dismissed 5 Cir., 181 F.2d 494; Achord v. Great American Indemnity Co., La.App., 68 So.2d 643; King v. Risdon & W. E. Holoman Lumber Co., La.App., 76 So.2d 548; Howard v. Great American Indemnity Co., La. App., 106 So.2d 539.
In the Achord case, supra, we said:
“It is universally recognized that each case involving an exception to the general rule that one should have such control over his automobile so as to be able to stop within the distance in which he can see plainly an obstruction or danger ahead must be dependent on the fact and circumstances of each particular case, and that no hard and fast rule is applicable to such cases.” [68 So.2d 646.]
In the King case, supra, it was stated the particular facts of each case must be considered and no hard and fast rule is applicable. While, in the King case, the plaintiff was found guilt of contributory negligence, the exception to the general rule is reviewed as follows:
“In discussing the foregoing rule, which obliges a motorist to reduce his speed and control his car so that he can stop within the distance in which he can plainly see an obstruction, the Supreme Court in Gaiennie v. Cooperative Produce Co., Inc., 1940, 196 La. 417, 199 So. 377, 379, said:
“ ‘The difficulty in laying down a hard and fast rule is that the act provides that the conditions and circumstances must be considered as well as the traffic, surface and width of the highway, and the location of the neighborhood. Such being the case, the particular facts of each case must be considered in arriving at a conclusion, and it would not be safe to lay down a hard and fast rule for that reason.’
“And this court through Judge Taliaferro in Hogue v. Akin Truck Line, La.App., 1944, 16 So.2d 366, 368, observed:
“ ‘In each of the cases wherein the driver of the moving vehicle, which ran into a stationary one, was absolved from negligence as to contributing cause of the collision, the conditions that superinduced the accident were unusual, exceptional. They were not to any extent the result of the moving motorist’s failure to reasonably perform every duty imposed by law.’
“The unusual conditions and exceptional circumstances referred to which go to form exceptions to the general rule above stated are such that even *88 with the exercise of ordinary prudence and care by the motorist an accident would more than likely occur. Cases falling in this group have been cited by counsel to support plaintiff’s right of recovery. Thus Rea v. Dow Motor Co., La.App., 1948, 36 So.2d 750, was an action where plaintiff traveling at a speed of twenty miles per hour in the rain, ran into a parked military car without lights, which was olive green in color, and a portion of it extended over the pavement; Carter v. Le Blanc Lumber Co., La.App., 1948, 37 So.2d 471, involved a truck loaded with logs moving at night on the paved highway without tail lights, clearance lights or flags; the truck driver in Capitol Transport Co., Inc. v. Blossman, Inc., 1951, 218 La. 1086, 51 So.2d 795, was found guilty of contributory negligence in parking on the highway for a twelve hour interval a dangerous gasoline truck without flares and without making a special effort to remove it as required by LSA-R.S. 32:241, subdivision B, 32:442 et seq.; in Lovelace v. Gowan, La.App., 1951, 52 So.2d 97, defendant’s vehicle, a trailer without truck or lights, and of the type known as a low-boy, having a flat bed no taller than its wheels presented a type of construction difficult to observe when in range of a motorist’s headlights; in Evans v. Kirby, La.App., 1951, 53 So.2d 412, there was involved a truck stopped in the highway with no lights whatsoever; facts similar to those in the preceding cases were involved in Columbia Fire Insurance Co. v. Black, La.App., 1952, 61 So.2d 534, where there were unusual weather conditions and the offending vehicle was without lights; and Simms v. Lawrence Bros., La.App., 1954, 72 So.2d 538, a decision by this court, turned upon the angular parking of a truck on the highway without ■lights by an intoxicated driver.” [76 So.2d 551.]
In Dodge v. Bituminous Casualty Corporation, 214 La. 1031, 39 So.2d 720, the Supreme Court of Louisiana affirmed a decision of this Court where we held a plaintiff was not contributorily negligent when he was driving his automobile at a legal rate of speed in the nighttime, his lights burning and a careful look-out ahead being kept, when he struck a stationary truck on the highway without lights or flares, as required by law, when the truck was parked at an angle of about 45 deg. on the paved portion of a highway, extending about 4 or 5 feet into the lane of traffic in which the plaintiff was traveling. The plaintiff’s visibility was affected by the on-coming traffic with lights burning, which was approaching from the opposite direction, and he did not see the unlighted parked truck until he was in such close proximity that he could not have avoided the collision except by swerving around the truck, which would have caused a head-on collision with an on-coming car.
In the present case the plaintiff was shown to have been traveling at a legal rate of speed, and the defendant has not shown there was any warning given him that an unlighted car was obstructing his lane of traffic. The Manuel vehicle had its lights burning and although it had come to a virtual stop there was no reason for the plaintiff to believe there was a stationary obstacle in his lane of traffic. The evidence introduced by the defendant does not establish facts and circumstances which show the plaintiff should have known a condition of peril existed in front of him at a sufficient distance to allow him to bring his vehicle to a stop. When he could see,, the situation was such that the collision with the Hagerman vehicle could not have been-avoided except by swerving to his left and striking the Manuel vehicle. He did apply his brakes and he hit the parked vehicle on. its right fender. The trooper who investigated the accident testified there were a. few feet of skid marks but went on to say that he could not tell which car actually made these skid marks; they were in the- *89 south lane or east lane of traffic. As the Hagerman vehicle was stationary and the Manuel vehicle was practically stopped there can be no doubt but that these skid marks were made by the plaintiff’s automobile, which corroborates his testimony that he tried to stop his car as soon as he saw the parked vehicle. The trooper stated the point of impact was in the south lane or ■eastbound traffic lane of the highway. It is reasonable to believe the plaintiff could not llave avoided the accident when he saw the parked car no matter what he did. It was unlighted and he could not have seen it sooner than he did. The testimony offered by the plaintiff is sufficient to establish an ■exception to the general rule. The plea of ■contributory negligence, upon a careful examination of the evidence, has not been established, and we are of the opinion that the proximate cause of the collision was the negligent placing of the parked vehicle in the traffic lane of the plaintiff without any lights or warning signals.
The defendant cites only one case in support of its plea of contributory negligence upon the part of the plaintiff. This is Pitre v. Roberie, La.App., 117 So.2d 74. It is stated in defendant’s brief this last case cannot be distinguished from the present case “except to state that the driver of the Roberie automobile in that case had less warning than the plaintiff in this case”. We cannot agree. In the Pitre case we stated there was no legal excuse for the driver of the Roberie truck not to have seen the automobile being towed and the wrecker, or to have had his car under proper control so that he could have stopped before being forced to veer into the lane of traffic approaching from the other direction. There he was bound to have seen or should have seen the lights burning on both the wrecker and the automobile being towed, as well as the large directional blinker lights on top of the wrecker truck. We found the driver of the Roberie truck should have seen these blinkers when he was at a sufficient and safe distance to bring his vehicle to a stop. We have a far different situation here. The Hagerman automobile was unlighted and was parked partially across the traffic lane of the plaintiff. There were no warning signals, lights or otherwise, to give the plaintiff notice of the obstruction in time for him to have avoided the collision. The lights of the Manuel car evidently confused him for a moment and by that time he was right upon the stalled Hagerman car. If Thomas was giving any warning signals with his hands, as he said in his statement, he was too close to the stalled automobile for the plaintiff to have seen and heeded them in time to avoid striking the stationary car. The Pitre case and the present case present entirely different facts and circumstances.
The evidence reflects the plaintiff lost wages for one week in the amount of $126. He paid hospital and doctor’s fees in the amount of $226.50. The damage to his automobile was $1,381.91. Thus, these proven special damages total $1,734.41. In addition the plaintiff suffered some injury to his mouth and lips and his knee was hurt. His false teeth were broken and he suffered some inconvenience and pain for at least one week as well as the loss of the use of his automobile. $500 for these items is adequate.
For the reasons above assigned, it is ordered, adjudged and decreed that the judgment appealed from be avoided and reversed, and that there is judgment in favor of plaintiff, Oledaus Guillory, Jr., and against the Farmers Automobile Insurance Co., in the full sum of $2,234.41, together with legal interest thereon from date of judicial demand until paid, the defendant to bear the costs of both Courts.
Reversed.