Both parties to this suit appealed from a judgment in favor of the plaintiff for $608.59. Defendant, Hartford Accident and Indemnity Company, argues that the lower court erred in awarding plaintiff judgment for any amount, whereas plaintiff complains of the inadequacy of the award.
The facts of the case are simple and mainly undisputed. The accident giving rise to the suit occurred on the principal business street of the Town of Jonesboro, Louisiana, in the day time, December 16, 1946. Edward L. Peevy, employee of General Gas Corporation, driver of the one and one-half ton truck involved in the accident, parked same close and parallel to the street's left curb, headed up-grade. He thought he set the emergency brakes effectively. The motor was left running. He walked to the opposite side of the street into a business house and after the lapse of a few minutes the truck was seen by him and others, from gravity, rolling diagonally backward, and after traversing some seventy-five feet, crashed into the twelve cylinder Lincoln-Zephyr automobile of A. S. Holliday, parked on the opposite side of the street. The brakes are mechanical, as distinguished from hydraulic. Damages herein sought by Holliday are itemized as follow:
Cost of repairs to car $311.59 Amount necessary to complete repairs 40.00 Depreciation of value of car 300.00 Loss of use of car 700.00 --------- Total $1,351.59
The specific acts of negligence charged to Peevy, driver of the truck, alleged to *Page 237 
have been the cause of the accident are these:
Parking the truck on an incline in the street and leaving it there unattended, with motor running; failure to properly set the brakes; not doing any other prudent act to prevent the car rolling down hill should the brakes fail to hold.
The General Gas Corporation was protected against loss from accidents in which its motor vehicles were involved, by policy of insurance issued by the Hartford Accident and Indemnity Company. This company alone was impleaded as defendant. Answering the suit, it denied that the true facts convict Peevy of any sort of actionable negligence in connection with the accident. But, on the contrary, it alleges that the accident resulted solely and entirely from an unforeseeable mechanical failure in the emergency brakes for which neither Peevy nor his employer was in any manner responsible. Defendant further alleged that when Peevy parked the truck he "pulled on the emergency brakes to prevent said truck from moving, made a proper check of same, found that they were holding, and then got out of the truck and walked across the street"; that a few minutes later the truck rolled backward and into plaintiff's car; that immediately after said accident, examination of the truck by Peevy revealed that the emergency brakes were still set; that he had frequently parked the truck on the streets of Jonesboro in the same manner he parked it the day of the accident, without a single unfavorable result; that for this, among other reasons, he was not negligent in assuming that the truck would remain stationary on this occasion; that he did all that could be expected of a prudent driver to insure the truck's immobility.
In alleging the specific acts of negligence committed by Peevy, one of omission, was overlooked. It was proven by his own testimony, elicited by plaintiff's counsel, and it consists of the failure to turn the front wheels of the truck toward the curb before he left it. No objection was offered to the admissibility of this testimony. It is in the record unchallenged. For this reason, its status is not unlike testimony adduced to establish the specifically alleged acts of negligence. We shall accord to it the legal significance it deserves.
As a witness, Peevy did not unequivocably testify that he set the emergency brakes before he alighted from the truck. This is clearly shown from the following excerpt from his testimony, viz.:
"I pulled up the emergency. I had had my foot on the foot brake. When I got out of the truck, I presumed the brake washolding. I stood on the outside of the truck for a minute before the boys decided to get the coffee."
Peevy testified that he drove the truck from the scene immediately after the collision, made tests of its braking power and found the same to be in first class condition. He did not testify, however, as the answer alleges, that after the accident the brakes were still set. The record is silent on this material fact.
It is shown, as alleged, that the gas corporation had its motor vehicles inspected and check-up thereof made regularly to determine their mechanical condition. It was testified that the truck in question was so examined and inspected not very long prior to the date of the accident, and was found to be in satisfactory mechanical condition.
From the foregoing, it is reasonable to conclude that the brakes of the truck were not set by Peevy as firmly as they could and should have been, or, if so set, the vibration from the running motor caused release thereof sufficient to allow the truck from gravity to roll down the street as it did. The latter action is more than a mere possibility. Effort was made to prove the possibility of mud or gravel getting into the brakes' mechanism, and, if so, this would prevent efficient enmeshing of the cogs and thereby the braking power would be rendered, to some degree, impotent. This, we believe, to be not more than a mere possibility.
Since the brakes were efficient prior to and immediately after the accident, the inference perforce arises that had they been efficiently set the truck would not have moved so long as that condition remained. In view of the truck's movements, so soon after Peevy left it, the inference *Page 238 
also arises that the brakes were not set in the manner required by law. The burden rested squarely upon defendant to prove that the brakes were efficiently set by Peevy. There were two men in the truck besides Peevy, one of whom died before trial and the testimony of the other was not adduced. The testimony of Peevy alone is depended upon to establish the contention that he did set the brakes, but he only says: "I presume the brakes were holding". This is not sufficient. He had no right to presume anything in connection with immobilizing the truck. He should have known, and have taken every possible precaution to know, that the brakes were "holding". The record does not disclose that he did this.
Parking upon an incline is of itself a dangerous position in which to leave a heavy motor vehicle. The strain upon its braking mechanism is great and constant. Nothing within reason should be left undone to guarantee the vehicle's immobility. Peevy's failure to make certain that which was susceptible of being made certain convicts him of negligence.
We are of the opinion, however, that a decision in this case may also safely be based upon Peevy's negligence in another respect.
The lawmaker has wisely seen fit to provide rules for the regulation of traffic on the highways of the state, including the parking of motor vehicles on such highways. The rule that has peculiar application to the facts of the present case is No. 15(e) of section 3 of the Highway Regulatory Act, Act No. 286 of 1938, which reads as follows:
"No person having control or charge of a motor vehicle shall allow such vehicle to stand on any highway unattended without first effectively setting the brakes thereon and stopping the motor of said vehicle; and, when standing upon any grade, without, in addition, turning the front wheels of such vehicle to the curb or side of highway."
By leaving the truck parked in the manner admitted, its driver, even though it be conceded arguendo that he did set the brakes and they failed from latent mechanical defects, violated two important provisions of the quoted rule, to-wit: he left the motor running while unattended, and the front wheels were not turned toward the curb. Whether the running of the motor contributed to the accident will never be definitely known. The requirement that the wheels be turned toward the curb, in this case, at an angle to the left, is a most important one. It was designed to prevent a vehicle, so parked, from running wild in the event the brakes, for any reason, failed to hold it fast in place. In this case had the front wheels been turned in the position required by the statute and the brakes failed to hold, if set, the vehicle automatically would have backed at an angle to its left until the rear left wheel rested against the curb. Had this statute been observed, the accident would not have occurred. The non-observance of the statute in the respects mentioned, in our opinion, was at least a proximate cause of the accident. The violation of a traffic law is per se negligence. Such negligence is actionable if it is a or the proximate cause of an accident.
Defendant argues that the street on which the accident happened has not been shown to be a highway or part of a highway within the purview of the quoted rule. This contention is not well founded. Subsection (n) of Section 1 of said Highway Regulatory Act is determinative of this question. This section is to be found under title "Definitions and General Authority." It reads:
"The term 'Highway' includes every way or place of whatever nature open to the use of the public, for the purpose of vehicular travel."
There is no controversy with respect to the amount of the repair bill, fixed by the lower court at $308.59.
We do not believe that plaintiff has established his alleged financial loss for being deprived of the use of the car for a month or more following the accident. The car was not disabled to the extent that it did not run.
Plaintiff follows the occupation of water well contractor. The business, according to his own testimony, is quite prosperous. He owned two automobiles besides *Page 239 
the damaged one, five trucks, and an aeroplane, all of which were employed in whole or part in promoting the water well business. He did not buy or lease a car or truck to replace the injured car, which he made no effort to have repaired for thirty days or more after the accident. He said he expected and waited on defendant to repair the automobile and offers this as the reason for not taking prompt steps to have the repairs made. It may be that defendant's adjuster delayed unreasonably long to investigate the accident and damage to the car and make suggestions to plaintiff concerning repairs, but plaintiff was not at all at the adjuster's mercy on this score. He could have taken action, clearly within his right, that would have bound the defendant for necessary repairs to the damaged vehicle, if held liable for the payment of such damages.
It is likely true that the temporary disability of the car necessitated some rearrangements and shifts in the supervisory phase of plaintiff's business, but the business continued without interruption and, so far as the record reveals, without provable financial loss because of lack of use of the damaged automobile.
This brings us to a consideration of the alleged depreciation in value of the car as a direct result of the accident. Recovery for this sort of damages has been, in a few cases, recognized by the courts of this state. The lower court awarded $300.00 on this phase of the demand.
The car was purchased in 1943 for $2,500.00. It had evidently been subjected to hard use as plaintiff testified that not long before the accident he expended $300.00 on it for general repairs, etc. He used it for nine months after it was injured and then sold it for $1,050.00, the best price he was offered therefor.
It is plausibly argued by defendant's counsel that damage to the car from the slowly moving truck, requiring an expenditure of only a little more than $300.00 to repair, could not have also caused depreciation to the extent of $300.00; nor, in fact, to any amount.
It is shown, a fact well known to all, that at the time the car was sold the used car market was eagerly seeking to acquire used cars and high prices were being paid for them, but automobiles of the Lincoln-Zephyr type did not move so readily as Fords, Chevrolets, and cars of lesser price. The higher priced used cars were not bringing prices so near the original cost as were used cars of lower prices. As respects higher priced cars, after use for four or five years, outright sale thereof for as much as forty per cent of the original price generally would be considered a fair price.
As argued by defendant, plaintiff's car was struck on its left hand side about the rear door. It does not appear that the motor or other important parts of its mechanism were injured. Body injuries, while expensive to repair, may be restored to former good condition and appearance by competent mechanics. To substantiate a claim for depreciation in the value of a passenger car due to collision, the proof should be of a clear and not uncertain character.
It does occasionally occur that a damaged motor vehicle cannot be restored to its former running condition and appearance. If this cannot be done, of course, the vehicle for all practical purposes is totally destroyed. In the instant case, following the accident, the car was continuously driven on short errands before delivery to a mechanic in Monroe, Louisiana, for repairs.
It is our opinion that the claim for depreciation has not been established to that degree sufficient to warrant a judgment therefor.
For the reasons herein assigned, the judgment from which appealed is reduced to Three Hundred Eight and 59/100 ($308.59) Dollars, and, as thus reduced, said judgment is affirmed. Plaintiff is cast for costs of appeal; all other costs shall be paid by the defendant. *Page 240