GLADNEY, Judge.
Mrs. Elizabeth Gibbs Fernandez received serious injuries when the automobile in which she was riding as a guest collided violently with the rear end of a large van parked on Louisville Avenue in the City of Monroe, Louisiana. She brought this action against the owner of the van, T. J. Blackburn Syrup Company, and its insurer, the Hartford Accident & Indemnity Company, to recover damages occasioned by her personal injuries.
After trial judgment was rendered absolving the driver of defendant’s vehicle from negligence and rejecting the demands of plaintiff, hence this appeal.
During the early morning hours, about 1:45 o’clock A. M. of January 17, 1952, plaintiff was riding home with three other occupants of an automobile from an evening of dining and dancing. Bill Michael *640 Daugherty was driving the vehicle, an Oldsmobile, and seated in the car with him were plaintiff, who occupied the right side of the front seat, and J. G. Coleman and Mrs. Mildred Marrs, who were on the rear seat. The vehicle was traveling eastward along U. S. Highway No. 80. It had left West Monroe and was crossing the four-lane arched traffic bridge over Ouachita River. As Daugherty came near the east end of the bridge he observed a traffic light signalling red at the intersection of Louisville Avenue and Riverfront Street in Monroe. Riverfront Street is a north and south street which crosses Louisville Avenue at the foot of the traffic bridge. Louisville Avenue is a continuation of U. S. Highway 80 toward the east from the end of the traffic bridge. As Daugherty came closer to the intersection the traffic light changed to green and he continued through the intersection driving his automobile in the south traffic lane at a speed estimated to have been from 25 to 30 miles per hour. After the car had crossed the intersection and proceeded a distance of approximately 20 feet further it struck the rear end of the large merchandise van. The automobile was driven under the rear end of the van inflicting personal injuries and considerable property damage.
The van with which the automobile collided was 30 feet long and 12 feet high. It was attached to a 1947 White truck heading toward the east and was parked close to the south curb of Louisville Avenue, with its rear end 20 to 25 feet distant from Riverfront Street.
For cause of action it is alleged William Riley McKinley, driver of the truck and van, was guilty of statutory negligence by illegal parking, failure to display proper lights and through failure to set out flares. Specific violations of Municipal Ordinance No. 2788 of the City of Monroe and sections of Highway Regulatory Act, Title 32 of the LSA-Revised Statutes of Louisiana, are invoked. The action is defended on the ground Daugherty was driving the automobile in a negligent manner in that he was exceeding the speed limit and through not keeping a proper lookout and, it is argued, such negligence was the sole proximate cause of the accident. In the alternative, respondents plead independent contributory negligence on the part of plaintiff in failing to direct Daugherty to slow his vehicle and drive more cautiously.
In rejecting plaintiff’s demands the trial court, inter alia, found the evidence established: that plaintiff was a guest in the car; the truck and van were parked on the south side of Louisville Avenue approximately 20 feet from the intersection of Louisville Avenue and Riverfront Street; that the van was constructed of metal sheeting of aluminum color and was at the time of the collision covered with dust and was muddy; that the truck had been parked for some time and at the time of the collision its driver was asleep in the cab of the truck; that no flares had been set out by the operator of the truck; and that the truck was parked a distance of about 60 feet from the east end of the bridge. His decision held that negligence could not be imputed to plaintiff and that she was not guilty of contributory negligence; and that finally the sole proximate cause of the accident was the failure of Daugherty to keep a proper lookout. Our review of the record finds this court in accord with the above findings, with the exception that we do not find the truck driver was asleep at the time of the collision. However, this fact is relatively unimportant as it cannot be considered as a cause of the accident.
For the purpose of establishing statutory negligence counsel for plaintiff relies upon various provisions in the Monroe Traffic Ordinance, particularly sections 46, 16, 47, 48, and 49, and certain sections of the Louisiana Highway Regulatory Act, LSA-R.S. 32:280, 32:294, 32:313, 32:315 and 32:415. We think no useful purpose will be gained by a detailed discussion of the traffic regulations referred to which apply to motor vehicles of the same class as the truck and van here involved and concern stopping and parking, and the display of lights and flares. Section 280 relates to loading and the extension of objects beyond the rear bed of the vehicle body and *641 is not relevant. Similarly, Section 315 pertains to requirements as to the display of lights to the front of the truck, and this regulation is unrelated to the causes which could have any bearing upon the instant case. We note further that Section 16 of Ordinance No. 2788 requires the driver of a vehicle upon a four-lane street to drive on the right of the center lane and right lane with certain exceptions, including passing. This section also prohibits momentary stopping on the paved portion of four-lane streets where shoulders exist sufficiently wide to accommodate a vehicle.
Counsel for plaintiff assert sections 294, 296, and 313 of Revised Statute, Title 32 required the display of a red light under normal atmospheric conditions visible for a distance of 500 feet to the rear. Also it is contended LSA-R.S. 32:441 requires the display of flares, reflectors and other similar devices where motor trucks are parked on the public highways between one-half hour before sunrise and one-half hour after sunset.
In an effort to correlate city and state laws the city officials and state legislators provided: “ * * * That it shall be unlawful for any vehicle to be driven or operated in the City of Monroe between sunset and sunrise, without burning and displaying on said vehicle the headlights, tail lights and clearance lights as required by the laws of the State of Louisiana then in force.” Section 46 of Ordinance No. 2788.
The Highway Regulatory Act, LSA-R.S. 32:380, expressly states:
"Nothing contained in this Chapter shall limit the rights, powers and duties of the governing bodies of cities and towns in this state to continue the exercise of control over streets, alleys and other public places located within their corporate limits, nor to limit the right of such cities and towns to control traffic upon the streets, alleys and other public places therein under any law of this state. However, no city or town shall pass any ordinance or make any regulations establishing any lesser limit or greater requirement than is provided for by the terms of this Chapter, except as may be herein specifically authorized.”
Our attention is not called to any portion of the Monroe Ordinance prohibiting generally the parking without lights of a motor vehicle such as is herein involved, and Section 47 after prescribing the lights to be displayed on parked vehicles, specifically provided:
“Provided that this section shall not apply in such places where there is displayed sufficient illumination from street lights or other sources to make such parked vehicle clearly distinguishable and visible under all atmospheric conditions for a distance of not less than 500 feet from both front and rear of said parked vehicle.”
Subject to the police power as exercised by the proper governing authority the parking of motor trucks at night in cities and on state highways is a necessary incident to transportation. An informative discussion of this subject is found in Kimble v. Standard Oil Company, 235 Ky. 169, 30 S.W.2d 890, 891, where the court said:
“It is commonly known that highways outside cities have a berm or shoulder on either side of the paved or main traveled portion of the highway. Except in cases of emergency, as where the car has become disabled, it can usually be parked on the side of the highway so that it will not stand upon the main traveled portion thereof. On the other hand, city streets are usually paved from curb to curb, and all of the street is ordinarily used for travel by motor vehicles. We conclude that notwithstanding the definition of the word ‘highway’ in section 2739g-l, subsection (f), of the Motor Vehicle Act, the Legislature in using the words ‘main traveled portion of the highway’ in section 2739g, subsection 48, of the same act intended that subsection to apply only to highways outside cities and not to city streets. Parking on city streets *642 under modern conditions is necessary, and since the Legislature, in regulating the parking of motor vehicles on highways, only prohibited parking on the main traveled portion thereof, it is clear that it did not mean that the prohibition should apply to the streets of a city. See City of Ashland v. Ashland Supply Co., 225 Ky. 123, 7 S.W.2d 833; section 3094, Kentucky Statutes.”
We are persuaded the traffic regulations invoked by plaintiff’s counsel did not prohibit McKinley from parking his vehicle not less than 20 feet from Riverfront Street against the south curb of Louisville Avenue without rear lights being displayed and without setting out flares, provided the place where he parked was sufficiently illuminated within the proviso of section 47 of Ordinance 2788.
There is little dispute as to the weather. It had been raining earlier during the evening but at the time of the accident no rain was falling and visibility was more or less normal. There is some dispute as to the effectiveness of the illumination of the intersection of Louisville Avenue with Riverfront Street, and the immediate area thereabout. The Ouachita River bridge, the east end of which the trial court found to be 60 feet from the place of collision, had a system of lights placed at intervals of 100 feet which extend its full length. At the east end of the bridge and at the southwest and northwest corners of the intersection of Louisville Avenue and Riverfront Street there were two large lights mounted on poles. At the northwest corner of the intersection there was also a regular municipal street light mounted high on a pole. Suspended directly over the intersection was a regulation signal light with a reflector over the top designed to throw light directly down into the intersection. Also at the southeast corner of the intersection was a yellow flashing caution light. Located on the southeast and northeast comers of the intersection were two used car sales lots, each of which was illuminated with strings of lights. The lot on the southeast corner of the intersection was operated by one J. C. Smith, who testified that it was illumined with twenty-five bulbs of forty watts each. This lot was very close to the parked van of the symp company. Other lights included a flood light on the parking lot operated by Smith, and lights across the front of the Home Cafe building which consisted of neon tubing and an entrance light to the Home Cafe, which was immediately adjacent to the place on Louisville Avenue where the van was parked. The evidence leaves little doubt that the area was well illuminated by the exterior lights and because of such illumination we are reasonably certain that the huge moving van of an aluminum color was plainly visible to all traffic proceeding along Louisville Avenue for a distance of 500 feet in either direction. Indeed, one witness, Deputy Sheriff Forrest Jarvis, testified that he came over the bridge traveling east a few minutes after the accident had occurred and that he easily distinguished the “big, tall, wide aluminum van over across the south curb on Louisville Avenue”. We therefore find defendant’s truck parked on Louisville Avenue, a main artery of travel carrying four lanes of traffic and being approximately 40 feet in width, was not required to display head or tail lights under the conditions shown to exist at the time of the collision. The record discloses the truck was not parked in a prohibited area. Under the circumstances we find McKinley did not violate any provisions pf Ordinance No. 2788 or State Highway Regulatory Act requiring the display of parking lights or the placing out of flares, and, therefore he should not be charged with statutory negligence. McKinley moreover testified that he had actually switched on two red lights easily visible from the rear and that these lights were broken in the collision.
Respondents have charged that Daugherty was driving at an excessive rate of speed and was negligent in running into the rear of the van. The testimony does *643 not affirmatively show that the Oldsmobile was being driven at a rate of speed that was excessive although he may have been traveling slightly in excess of the Monroe Traffic Ordinance which provided for a maximum speed of 25 miles per hour. We think unquestionably the accident was caused solely by the inattention of Daugherty and we find no reasonable explanation as to why he did not see the huge van parked in a well lighted area soon enough to easily avoid striking it by turning to the left where there was some 25 or more feet of open pavement on Louisville Avenue. Under all the circumstances established upon trial of this case we are forced to the conclusion that the sole proximate cause of the accident was the inattention of Daugherty in failing to see that which was plainly visible and which he should have easily seen in time to prevent any contact with the parked vehicle.
Plaintiff is charged with independent negligence in failing to alert the driver and to caution him to drive more cautiously. The charge is not supported by evidence. Daugherty, so the record indicates, had been driving at a reasonable rate of speed. The other occupants of the Oldsmobile testified that he had been driving cautiously and safely. The inattention which ultimately brought about the accident existed for such a brief period of time we are quite sure that Mrs. Fernandez, had she been under a legal duty to do so, would have had no opportunity to alert the driver to the impending danger. She testified that immediately upon seeing the vehicle and the impending collision she screamed. She could not have done more. However, a guest is not always required to warn and caution a driver. The Supreme Court observed in the case of Herget v. Saucier, 1953, 223 La. 938, 67 So.2d 543, 545:
“Generally, a guest passenger is not required to keep a constant lookout for the dangers of the highway, or to pay attention to the ordinary road and other traffic conditions incident to automobile driving, it being his right and privilege to place reasonable reliance upon the driver in charge of the car for the exercise of the necessary care and caution. Of course, if he is aware of a danger ahead which apparently is unknown to the driver, or if he observes that such driver is incompetent or otherwise unfit to operate the machine, a duty devolves upon him to take some precautionary action. White v. State Farm Mutual Automobile Insurance Co., 222 La. 994, 64 So.2d 245 (and authorities cited in both majority and dissenting opinions thereof).”
Counsel for appellant argues that irrespective of whether or not Daugherty was negligent if we should find that McKinley also was negligent plaintiff should be permitted to recover. We agree this is a correct postulation provided the negligence of defendant was a proximate cause of the accident, but in view of our finding herein which wholly absolves McKinley from any act of negligence the contention must be rejected.
Counsel has cited for our attention for the purpose for disclosing actionable negligence against the driver of the truck, the following cases which we have carefully reviewed but do not find controlling under the facts and circumstances presented herein: Rea v. Dow Motor Co., La.App.1948, 36 So.2d 750; Holliday v. Hartford Accident & Indemnity Company, La.App.1949, 38 So.2d 235; Dodge v. Bituminous Casualty Corporation, 1949, 214 La. 1031, 39 So.2d 720; Lynch v. Fisher, La.App.1949, 41 So.2d 692; Capitol Transport Co., Inc., v. A. R. Blossman, Inc., 1951, 218 La. 1086, 51 So.2d 795; Lovelace v. Gowan, La.App. 1951, 52 So.2d 97; Simms v. Lawrence Bros., La.App.1954, 72 So.2d 538.
The above cases are distinguishable on various grounds, such as: atmospheric conditions, the fact the accident occurred in a place not so illuminated as to excuse the use of lights and flares, or because the *644 vehicle was of such a construction or so parked as not to be visible under ordinary conditions.- In the instant case McKinley violated no statutory rule as to parking or lighting because his truck was clearly distinguishable and illuminated from the lights in the proximity of the place where parked. No act of the driver McKinley can be said to have been a contributing factor in the resulting accident.
For the foregoing reasons we find no error in the judgment from which appealed, and it is therefore affirmed at appellant’s cost.