LANDRY, Judge.
In this action ex delicto, plaintiffs, Walter L. Bailey and his wife, Myrtle Bankston Bailey, seek damages for the alleged wrongful death of their unmarried 28 year old son, Robert N. Bailey, who was killed in •an automobile accident which occurred ■shortly after daybreak on the morning of October 17, 1959, when a 1956 Oldsmobile ■sedan, owned and being operated by de■cedent, ran into the rear of a 1954 two ton, ■dump body Chevrolet truck belonging to defendant, City of Baton Rouge, while said latter vehicle was stopped on a public street, within the city limits, for the purpose of loading trash thereon. Standard Casualty Company joined in the initial suit seeking recovery of damages paid under its collision policy covering the vehicle being driven by decedent, Robert N. Bailey. Defendants are the City of Baton Rouge, owner of the truck involved in’ the accident, and said municipality’s liability insurer, The Fidelity & Casualty Company of New York. The Parish of East Baton Rouge was also originally impleaded as defendant herein but the action as to said latter defendant was dismissed upon a stipulation which concedes the truck in question was the property of the City. The trial court rendered judgment in favor of plaintiffs, Standard Casualty Company, Walter L. Bailey and Myrtle Bankston Bailey. From said adverse ruling defendants have appealed.
It is undisputed that on the morning of October 17, 1959, between 6:00 and 6:15 a. m., decedent, Robert N. Bailey, who resided with his parents, was returning to his home after having been out all night. As he was proceeding westerly along Stanford Avenue, traveling at a speed of approximately 25-30 miles per hour, he overtook a truck owned by the City of Baton Rouge and being operated at the time by employees of the municipality engaged in the assigned task of picking up and removing trash. The truck, a dark green Chevrolet with dump body, was stopped on the far right side of Stanford Avenue which is a two-lane, black-topped thoroughfare, measuring twenty-one feet in width and running in an easterly-westerly direction.
The record reveals that the the scene of the accident Stanford Avenue has rather wide grassy shoulders on either side of its paved surface. Defendant’s truck was parked as far to the right as possible, facing westerly, in the northern or right westbound lane, the right wheels of the truck being at the extreme northern edge of the paved surface. To the left of the truck the surfaced portion of the street was clear and unimpeded to a width of fourteen feet. The truck was equipped with headlights and a single tail light mounted on the left frame rail underneath the bed of the truck and approximately four feet, four inches forward *28 of the rear end of the vehicle and 21 inches inside the left side of the truck, said tail light measuring approximately three and one-half inches in diameter. In addition to the headlights and single tail light, the truck in question was equipped with directional signal lights both front and rear, the rear turn indicators being mounted on the left and right edges of the frame in such manner that they were partly under the edge of the frame, partially shielded by other metal parts of the vehicle, and only approximately one-half of each turn signal was visible to a motorist overtaking defendant’s said truck directly from the rear. As an overtaking motorist angled to either right or left his view of the rear turn signal lights increased proportionately. The tail light produced illumination rated at 3 candlelight power capable of being seen at approximately 500 feet in clear weather provided the lens was clean and free of foreign substances. At the time of the accident the headlights and tail light were burning and the turn indicator was flashing a yellow light indicative of a right turn. The tail light was somewhat obscured by road film. Decedent, without swerving, diminishing his speed or applying his brakes, drove directly into and underneath the rear of defendant’s stopped truck, the front of decedent’s vehicle penetrating a distance of approximately nine feet beneath the bed and lowered tail gate of the truck. The impact was of such force as to impel the truck forward a distance of approximately 15-20 feet. The vehicles came to rest with the front end of the automobile some six feet beneath the bed of the truck. The truck’s tail gate apparently smashed the windshield of decedent’s vehicle and penetrated the interior of the Oldsmobile. A tree limb, which was being loaded on defendant’s truck at the instant of impact, was ostensibly hurled through the broken windshield partially into the front of decedent’s automobile.
Appellees maintain the accident and resulting fatality were caused solely by the negligence of defendant’s employees in parking on the surfaced portion of the street when the adjacent shoulder was wide enough to permit parking off the roadway; parking the truck on the streets without lights, flares or warning signs and failing to use one of the employees present as a lookout; operating the truck without proper lights; lowering the tail gate of the truck so as to obscure the tail light and render it ineffective; loading the truck in such manner as to further obscure the inadequate lighting system and distort the silhouette of the truck thus making it more difficult to detect, and constructing the truck in such manner as to make its operation on the public highway and streets dangerous.
In answer to petitioners’ complaints appellants allege, in substance, that the employees in charge of the truck were free of negligence proximately causing the accident and alternatively contend the sole proximate cause of the accident was the negligence of decedent, Robert N. Bailey. Defendants aver decedent was contributorily negligent in driving his vehicle at an excessive rate of speed; driving while under the influence of intoxicating beverages; failing to maintain a proper lookout; failing to see the truck stopped on a well lighted municipal street, shortly after daybreak, with its headlights, tail light and rear right turn indicator on and burning; failing to apply his brakes and stop; and failing to drive into the clear and unimpeded left or passing westbound lane and pass the stopped truck without incident.
Our learned brother below concluded the employees of defendant municipality were negligent in parking a dark green truck on a public roadway at night with only one small tail light covered with road film and located seven feet back under the truck; parking such a vehicle when prevailing weather conditions and the natural foliage of trees and shrubbery adjacent to the street reduced visibility and diminished the effect of the lights on the vehicle as well as nearby street lighting; partially camouflaging the vehicle with limbs being loaded at the time of the accident; and failing to get *29 out of the truck and warn oncoming motorists of the vehicle’s presence on the street.
On appeal, able counsel for appellants contends the able trial judge erred in concluding the employees of defendant municipality were negligent in stopping the truck at the time, place and in the manner indicated. Counsel further contends the trial court erred in holding the employees of defendant municipality negligent in failing to alight from the cab of the truck and flag down motorists approaching from the rear and also erred in finding said employees negligent in partially camouflaging the truck with limbs and foliage. Next counsel argues the lower court erred in concluding the truck, as stopped, was not plainly visible at a safe distance to motorists approaching from the rear. Finally counsel for defendants contends the trial court erred in4failing to find decedent guilty of contributory negligence barring appellees’ recovery herein.
The record reveals decedent was employed as a chemist at a plant in Gramercy, Louisiana. At noon, October 16, 1959, he left work and went to Louisiana State University to conduct some research following which he proceeded to his home, arriving there at approximately 5 :00 P.M. Shortly before 9:00 P.M., decedent left his home and was later seen at a certain lounge at approximately 11:00 P.M. He remained at the lounge until approximately 2:00 A.M., at which time he left in the company of an entertainer, a female pianist, whom decedent invited to be his guest for an early morning meal. At approximately 5:30 A.M., decedent drove his companion back to the lounge where she picked up her own automobile and from whence decedent apparently proceeded on his way home.
At approximately 6:00 A.M., the employees of the Department of Public Works of defendant municipality, reported to the yard where trucks are kept on Perkins Road which location is slightly more than one mile distance from the scene of the accident. On this particular morning two trucks were assigned to trash collection activities, one driven by Nick Laporte and one being operated by Fair Bennett. Before leaving the yard, the lights of the vehicles were cleaned and the crews checked out and donned yellow rain suits because it was misting rain at the time. The trucks then proceeded toward Stanford Avenue, the truck being driven by Laporte stopped at the scene of the accident and the vehicle being operated by Bennett stopped some 300 feet to the rear or east of the lead vehicle, both trucks having stopped for the purpose of picking up trash left near the roadside by adjacent property owners.
At the moment of impact it was breaking day, official sunrise time being shown by the record as 6:07 A.M. Although it had been previously raining quite hard, when the accident occurred it was misting lightly. In the area of the accident, Stanford Avenue is lighted by a system of street lights spaced 150 feet apart and staggered alternately on opposite sides of the street. The rays of the lights project in a “butterfly pattern” so that the illumination of each light overlaps the area lighted by the next, thus lighting the entire street. The truck struck by decedent’s automobile was stopped 50 feet from the nearest light, located on the north side of Stanford Avenue, said distance being determined by measurement with a steel tape.
When the impact occurred, the driver of the truck, Laporte, was in the cab of the truck while his associates John Scott and Tony Messina, were in the process of loading the first limb onto the bed of the truck. Messina and Scott, both clad in yellow rain suits, lowered the tail gate to a horizontal position parallel with the bed of the truck in order to permit loading of the limb or branch which was too long to fit into the body of the truck. Messina was in the truck standing at the rear of the bed receiving the limb being handed him by Scott who was standing on the ground on the north shoulder of the road beside the truck “kind of leaning against the truck.” Prior to the impact neither Laporte, Messina nor *30 Scott were aware of decedent’s overtaking vehicle. Neither heard the sound of a horn blown or the application of brakes. Subsequent investigation revealed no skid marks left by the Bailey automobile although its brakes were found to be in good working order. Scott and Laporte testified it was “breaking day” at the time of the accident, all of the truck’s lights were on and burning and the street lights were on. Scott also testified in effect the truck was not camouflaged by the load inasmuch as the limb being put aboard at the moment of impact was the very first limb loaded.
Henry Buhler, who was in the cab of the second truck approximately 300 feet to the east of Laporte’s vehicle, testified the accident occurred as day was breaking. He also stated the street lights were burning and that he could see the tail light of the truck ahead.
James B. Terrell, City Police officer, testified that at 6:15 A.M., he was dispatched to the scene of the nearby accident by means of radio communication. He arrived at the scene in approximately three minutes. On his way to the scene, following the same route the trucks and decedent had taken, he could see the Laporte truck from a distance of about 500 to 600 feet. He further testified that without lights, visibility was approximately 300 feet.
Our learned brother below was evidently impressed by the fact there were no reflectors on the truck, no flares put out and no signs placed to warn the traveling public work was being performed. He also was apparently impressed by testimony of Buhler to the effect that when he heard the crash he was unable, because of poor visibility, to tell whether there was a collision. In addition, our esteemed colleague, appears to have been somewhat impressed by the testimony of Fair Bennett, driver of the second truck, to the effect he could see the Laporte truck by the street light but could not see the automobile that struck the •truck until he walked to the scene of the accident.
Examining the trial court’s conclusions, we note first that the truck was not parked as erroneously determined by our esteemed brother below. The evidence is uncontra-dicted that the truck was stopped with the engine running, the driver, Laporte, seated at the wheel, and two city employees, Mes-sina and Scott, engaged in loading trash onto the vehicle. Ordinance 497, the city traffic code of defendant municipality, introduced in evidence by both appellees and appellants, defines stopping and parking in Section 19, which provides as follows:
“SECTION 19.
“STOP. — (a) When required means complete cessation from movement.
“(b) STOP, STOPPING OR STANDING. — When prohibited means any stopping or standing of a vehicle, whether occupied or not, except when necessary to avoid conflict with other traffic or in compliance with the directions of police officer or traffic-control sign or signal.
“(c) PARK. — When prohibited means the standing of a vehicle, whether occupied or not, otherwise than temporarily for the purpose of and zvhile actually engaged in loading or unloading.” (Emphasis supplied.)
LSA-R.S. 32:241 (in effect at the time of the accident, prior to adoption of the 1962 traffic regulatory act), which regulates parking of vehicles on state highways is not applicable to an alleged violation of its provisions occurring within the residential or business district of defendant city. Steagall v. Houston Fire & Casualty Ins. Co., La.App., 138 So.2d 433. Moreover, the temporary stopping of a vehicle as herein shown, does not constitute parking as defined in LSA-R.S. 32:241. Lacour v. Continental Southern Lines, Inc., La.App., 124 So.2d 588.
Conceding, arguendo, defendant’s truck was "parked” as alleged by appellees and found by the trial court, there was no statu *31 tory need for any lights whatsoever considering Section 144(a) of the municipal ordinance specifically provides a vehicle lawfully parked in a business or residential area need display no lights. In this regard there is nothing in the record to indicate that, if the truck were parked, it was unlawfully or improperly parked. On the contrary, if the truck were considered “parked”, the evidence reflects it was parked in compliance with Sections 141 and 150 of the municipal ordinance which former section requires that a vehicle be parked parallel to the edge of the roadway with its right wheels within 18 inches thereof, and which latter provision stipulates a parked vehicle must leave at least 10 feet clearance for free movement of other vehicular traffic.
Nor do we find any merit in the contention that defendant’s employees were required, under the circumstances, to alight from the truck to warn overtaking traffic. The truck was lawfully stopped on a well lighted city street, shortly after daylight, with its lights burning. It was duly attended by a driver and two workmen who were engaged in the performance of their assigned task of collecting trash. The evidence clearly reflects the truck was visible from a reasonable distance by any overtaking motorist keeping a proper lookout and having his vehicle under proper control.
 On the other hand, however, decedent was required to maintain a constant lookout, steadily watching road conditions ahead, keeping his vehicle under such control, and maintaining such speed as was commensurate with the attending circumstances. Brockman v. Calvin, La.App., 90 So.2d 525. He had no right to assume the road ahead was open and to proceed without regard for the safety of those who might be in lawful use of the street. O’Rourke v. McConaughey, La.App., 157 So. 598, and cases therein cited.
Our distinguished colleague below placed considerable emphasis upon the circumstance that visibility was somewhat impaired by the light of early dawn and by the misting rain which prevailed. Such conditions, however, imposed a greater duty on decedent, Bailey. In this regard we note the following applicable statement of law contained in Ardoin v. Southern Farm Bureau Casualty Ins. Co., La.App., 133 So. 2d 129:
“The jurisprudence of this State is well settled to the effect that when visibility is materially impaired because of smoke, mist, dust, fog or other atmospheric conditions, a motorist is held to a duty of operating his vehicle with an unusually high degree of care. He should reduce his rate of speed to such an extent and keep his car under such control as to reduce to a minimum the possibility of accident from collision, and as an extreme measure of safety it is his duty, when visibility ahead is not possible or is greatly obscured, to stop his car and remain at a standstill until conditions warrant going forward. He does not have a right to assume that his course of travel is free from danger or obstruction in the absence of his ability to see clearly ahead, but if he continues to travel as if he knew there was perfect clearance ahead, he does so at his own risk and peril.” (Cases cited.)
See also Bernstein v. Cathey & Carrell Truck Lines, La.App., 32 So.2d 403; Rachal v. Balthazar, La.App., 32 So.2d 483; Lewis v. Quebedeaux, La.App., 134 So.2d 93.
Although the evidence is to the effect Bailey was not exceeding the speed limit of 30 miles per hour, it must, under the circumstances, be assumed he was either traveling at a speed excessive under the prevailing weather conditions or, what appears more likely, he failed to timely oh serve the presence of the truck. The evidence clearly preponderates in favor of the conclusion Bailey did absolutely nothing to avoid- the collision. There is nothing in *32 the record to justify the assumption of the trial court that decedent may have seen the truck and may have applied his brakes prior to impact. On the contrary, Scott and La-porte testified they heard no noise made by the application of Bailey’s brakes and no skid marks were observed following the accident. The evidence further shows that decedent ran squarely into and under the bed of the truck, directly from the rear, without swerving or otherwise taking any evasive action whatsoever. We believe the conclusion inescapable that he did not see the truck at all. We further believe his failure to see the truck was probably induced by inattention in turn resulting from fatigue normally experienced by an individual who has been up all night. In fairness to decedent, however, we wish to state there is nothing in the record to substantiate defendants’ contention that decedent was intoxicated at the time of the accident.
We find, therefore, defendants’ employees were guilty of no negligence proximately causing this unfortunate accident. We also find the accident in question resulted solely from the negligence of decedent, Robert N. Bailey, in failing to timely observe the presence of defendant’s truck and negligently running into the rear of defendant’s vehicle which should have been observed by decedent had he been maintaining a proper lookout. See Fernandez v. Hartford Accident & Indemnity Company, La.App., 76 So.2d 638, wherein, under circumstances similar to those herein but more favorable to plaintiff therein, recovery was denied a guest passenger in an automobile which struck a truck-trailer parked on a street in Monroe, Louisiana, without lights, flares or reflectors of any kind.
Accordingly, it is ordered, adjudged and decreed that the judgment of the trial court in favor of plaintiffs, Walter L. Bailey, Myrtle Bankston Bailey and Standard Casualty Company against defendants, The Fidelity & Casualty Insurance Company of New York and the City of Baton Rouge, in solido, be and the same is hereby annulled, reversed and set aside and judgment rendered herein in favor of said defendants (appellants) and against said plaintiffs (appellees) dismissing and rejecting said plaintiffs’ demands at plaintiffs’ costs.
Reversed and rendered.