Rafael Martínez Mattei, Plaintiff and Appellant, *v.* Aquiles Montañez, etc., et al., Defendants and Appellees.

No. R-66-132.     Decided March 2, 1970.

*Héctor Lugo Bougal, Delia María Auffant,* and *Delia Lugo Bougal* for appellant. *Gregorio Lacot Salgado* and *Gaetán Roberts & Alcalá* for appellees.

MR. JUSTICE RAMÍREZ BAGES delivered the opinion of the Court.

Feeling aggrieved by the judgment rendered by the trial court on April 14, 1966, dismissing his claim for damages for injuries sustained on account of a collision which occurred on Monserrate Street in Santurce, when appellee's automobile was going downgrade until colliding against appellant's vehicle, trapping the latter and causing him the fracture of the fibula of the right leg, appellant assigns that the judgment "is contrary to the evidence . . . and to the principles on negligence, in force in this jurisdiction."

We conclude that he is right and that, by virtue thereof, said judgment should be reversed and another rendered ordering appellees to pay appellant $7,500 on account of the damages sustained, plus $500 for attorney's fees.

The trial court concluded that:

"On February 12, 1963, about 5:00 p.m., defendant, Rafael Montañez Martínez, was driving a Consul automobile property of his parents, Aquiles Montañez and Angélica Martínez, along Monserrate Street in Santurce, traveling from north to south, only direction in which the traffic of vehicles is permitted along said street. Upon arriving in front of house No. 556, defendant parked the automobile at the left side of the street, turned the front wheels so that the back part of the left front wheel rested against the curb of the sidewalk, applied the emergency brake which was the pedal kind, stopped the engine locking the ignition, and alighted from the car to go into Biascoechea's house.

"Approximately twenty (20) minutes later, plaintiff, Rafael Martínez Mattei, parked his vehicle on the same street, which is steep with a sharp slope, at some distance behind defendants' vehicle, but at the opposite side of the street. As to the way in which plaintiff parked his car—whether he applied the emergency brake or turned the front wheels or turned off the motor —there is no evidence whatsoever. Immediately, plaintiff alighted and headed towards the trunk of the car, in the rear part.

"Suddenly, defendants' automobile started backwards, collided with the left front part of plaintiff's vehicle, causing the

same to move backwards also. Plaintiff was hit by the rear bumper of his automobile against the bumper of a third automobile which was parked there. Both vehicles—that of plaintiff and that of defendants—were stopped by this third automobile.

"According to the testimony of Rafael Montañez—to whom the court has granted full credit, because of the firmness and consistency of his testimony—while Biascoechea was talking in the balcony of the latter's house, he heard a harsh, metallic noise, as the one produced by a spring or brake which has become loose, which noise called his attention. Upon turning his body, Montañez observed that his automobile was moving backwards. He ran towards the car to try to stop it, but before he could reach it the automobile had already collided with that of plaintiff.

"As a result of the accident, plaintiff, who was 70 years old, suffered a fracture through the upper third of the fibula of the right leg; not displaced fracture, but of acceptable alignment; he had a plaster cast on his leg for 46 days, and he walked aided by crutches during a total of three months. Plaintiff's physical injuries and mental anguish, if compensable, would be estimated by us in the amount of $5,000."

The trial court did not refer to certain facts which were clearly established by the evidence, that is, that (a) both appellee, Montañez Martínez, and his companion, José Biascoechea, agreed that the conversation in the balcony of the latter's house lasted from 15 to 20 minutes, and (b) it was during said conversation that appellee heard "a metallic noise as if the emergency brake had become loose," and upon turning around he saw that his vehicle "was beginning to move backwards"; that at the moment the collision was about to occur he was able to open the door of his vehicle and "I looked like this and applied the brakes so that it would not move backwards anymore, and the emergency brake was loose"; that he started the motor of the automobile right away until "I left it on the middle of the street . . . I applied the emergency brake and stopped the engine"; the explanation given by Montañez Martínez as to why his vehicle moved

backwards was "because it was on a slope . . . the emergency brake became loose and it moved backwards."

The trial court concluded that the inference of negligence authorized by the doctrine of *res ipsa loquitur* was rebutted by appellee upon showing that "he took every possible precaution in order that his automobile be parked correctly."

■ The doctrine of *res ipsa loquitur* is applicable if the following requirements are present: (a) the accident must be of such a nature that, ordinarily, it will not happen in the absence of negligence on the part of some person; (b) it must be caused by an agency or instrumentality within the exclusive control of defendant; and (c) it should not have happened as a result of any involuntary act or negligence of the plaintiff.

Let us see, then, whether the requirements already pointed out are complied with herein for the inference of negligence authorized by the doctrine to arise.

The second requirement is the one we must pass on since the evidence shows that the two others have been complied with.

According to the facts proved in *Knippenberg v. Windemuth*, 238 A.2d 915 (Md. 1968), the appellant parked his car at the curb of a street having a steep grade. Seconds later he heard a "thump" or "thud" and he observed that the vehicle had left its parked position, turned right in the center of the street, and went over the opposite curb and onto the property of the appellees, until it came to rest near their house. Upon affirming the judgment in this case ordering appellant to pay for damages sustained by the appellees, the court said that "The mere occurrence of an accident involving a motor vehicle or an injury inflicted by a motor vehicle does not make applicable the doctrine of *res ipsa loquitur*, but if the accident or injury is one which ordinarily would not result without negligence on the part of the operator of the vehicle the doctrine may come into play. . . .

"Where the vehicle and its handling were within the sole control of its operator, and the occurrence is one which ordinarily would not occur unless the vehicle was defective or negligently handled, an inference of negligence sufficient to meet the plaintiffs' burden of proof before the jury and to sustain a verdict against the defendant arises and requires the defendant to go forward with the evidence. *The defendant cannot avoid the impact of the doctrine of res ipsa loquitur by the mere contradiction of the plaintiffs' testimony or by the assertion that he took every precaution to avoid the occurrence. . . .*" (Italics ours.)

In *Lewis* v. *Wolk*, 228 S.W.2d 432 (Ky. 1950), appellee testified that he parked his automobile headed downhill about one-half hour prior to the accident and that in so doing he turned the wheels into the curb and applied the emergency brake. Two mechanics who checked the car testified that the emergency brake was in good condition and that if it was applied it could maintain the vehicle in its place. Appellant testified that suddenly he heard the movement of the car, and before he was able to get out of its way, it struck him and continued downhill. There was no one in the vehicle at that moment. The court concluded that the doctrine of *res ipsa loquitur* was applicable. It pointed out that the trial court took the view that when the defendant produced substantial evidence that he had not committed any negligent act, plaintiff's claim had been destroyed. Upon reversing, the court stated that the inference of negligence may be overcome by evidence that the accident was due to some other cause or causes over which the owner of the vehicle had no control, or to an intervening cause; that the presumption or inference of negligence was not destroyed by evidence tending to show the contrary, that is, that the owner or driver of the vehicle did not commit any negligent act. The court said that "Because the defendant had control of the instrumentality and the accident would not, ordinarily, have happened without

negligence, the very thing itself is positive proof of the defendant's fault . . ." that *"there are exceptional cases where the defendant's evidence so clearly establishes the absence of negligence that a directed verdict in his favor may be proper. This rule is applicable when it is shown that an efficient, independent intervening cause initiated the chain of events"* (italics ours) ; that in this case appellee was called upon to explain what cause, except his negligence in parking his automobile, caused it to leave the curb and run over appellant. *The fact that he stopped the car, applied the brakes, and turned the wheels to the curb does not, satisfactorily, answer the question arising from the inference.*

In *Estridge* v. *Estridge*, 333 S.W.2d 758 (Ky. 1960), the court held that "An increasingly greater degree of care is exacted of the driver who parks a car on an incline or other place involving risk that it may start and move without outside interference." *Holliday* v. *Hartford Accident & Indemnity Co.*, 38 So.2d 235 (La. 1949) ; *Calla* v. *Mandella*, 72 N.W.2d 755 (Wis. 1955) ; *Pellard* v. *D'Allessandro*, 73 N.E.2d 590 (Mass. 1947) ; *Hudson* v. *Bennett*, 115 N.E.2d 20 (Ohio 1952) ; 3 Blashfield, Automobile Law and Practice, § 116.4; Restatement of the Law of Torts, 2d, § 328D, Comment, (f).

█ It is true that the time during which the vehicle was parked before starting by itself is a factor in determining whether or not its driver was negligent in parking the vehicle. *Johnson* v. *Jackson*, 226 A.2d 883 (Md. 1967) ; 16 A.L.R.2d 979, 993. In the case at bar the automobile moved by itself during a conversation which lasted from 15 to 20 minutes. This short period, of uncertain duration, is not so substantial as would preclude at law from inferring the driver's negligence. *Riley* v. *Larson*, 432 P.2d 775 (Idaho 1967) ; *Landrum* v. *U.S. Fidelity Guaranty Co.*, 151 So.2d 701 (La. 1963).

█ The testimony of Montañez to the effect that he complied with the requirement of immobilizing the vehicle with

the emergency brake and with the front wheel nearest to the sidewalk, diagonally towards the border of the curb or the edge of the highway (Vehicle and Traffic Law, 9 L.P.R.A. § 1013), does not establish per se the absence of negligence on his part. The brake appeared loose after the accident and, besides, if it had been applied upon parking the vehicle and had become loose after a moment, the car should have remained motionless if the front wheel nearest to the sidewalk was placed diagonally toward the border of the curb. Undoubtedly, the driver in this case did not comply with one of these two requirements, since he did not establish any other reason for the vehicle to move by itself.

The case of *Hermida* v. *Feliciano*, 62 P.R.R. 54 (1943), is clearly distinguishable, since the explosion of the rear wheel of the vehicle which caused the rim to blow off the wheel and injure the minor appellant constituted an unfortunate accident not ascribed to *any negligence on the part of the driver*. 2 Stevenson, Law of Negligence in the Atlantic States, § 634; *Injury by Parked Automobile*, 16 A.L.R.2d 979; A.L.R.2d Supplement.

With respect to the amount for damages, the trial court, although it dismissed the complaint, said that "Plaintiff's physical injuries and mental anguish, if compensable, would be estimated by us in the amount of $5,000."

The injured was a 72-year-old person who earned an average of $100 monthly, aside from the Social Security, as commission merchant in the sale and purchase of coffee. He suffered the fracture of the fibula of the right leg which required a plaster cast for 46 days. He walked with crutches during three or four months. As to his sufferings, he testified that "Just think of being in bed for so long, suffering intense pains, I almost went mad; I tell you I even told my son 'bring me a revolver to shoot myself because this is something terrible.'" He suffered pains "on the leg and I still suffer, I can hardly walk, I go walking along the street and I feel that my

leg becomes numb . . . I cannot travel anymore, I drive a car and after a half-hour my leg becomes numb." In view of the foregoing, we estimate the damages suffered by appellant in the amount of $7,500.

The judgment rendered in this case by the trial court on April 14, 1966, should be reversed and, instead, another rendered, ordering appellees to pay $7,500 to appellant on account of damages sustained by him plus $500 for attorney's fees, plus costs.

Mr. Chief Justice and Mr. Justice Blanco Lugo did not participate herein. Mr. Justice Santana Becerra abstained from intervening.