RAFAEL MARTÍNEZ MATTEI, demandante y recurrente, *v.* AQUILES MONTAÑEZ, ETC., ET AL., demandados y recurridos.

*Número:* R-66-132      *Resuelto:* 2 de marzo de 1970

*Héctor Lugo Bougal, Delia María Auffant y Delia Lugo Bougal,* abogados del recurrente; *Gregorio Lacot Salgado y Gaetán Roberts & Alcalá,* abogados de los recurridos.

EL JUEZ ASOCIADO SEÑOR RAMÍREZ BAGES emitió la opinión del Tribunal.

No conforme con la sentencia dictada por el tribunal de instancia en 14 de abril de 1966 desestimando su demanda de daños por lesiones sufridas con motivo del choque ocurrido en la calle Monserrate de Santurce al descender el automóvil del recurrido calle abajo hasta alcanzar el vehículo del recurrente, atrapando a éste y ocasionándole la fractura de la fíbula de la pierna derecha, apunta éste que la sentencia

"es contraria a las pruebas . . . y a los principios sobre negligencia vigentes en esta jurisdicción."

Concluimos que tiene razón y que en tal virtud debe revocarse dicha sentencia y dictarse otra condenando a los recurridos a pagar al recurrente $7,500 por concepto de los daños sufridos más $500 de honorarios de abogado.

El tribunal de instancia concluyó que:

"El día 12 de febrero de 1963, alrededor de las 5:00 P.M., el demandado señor Rafael Montañez Martínez, conducía un automóvil marca Consul, propiedad de sus padres, Don Aquiles Montañez y doña Angélica Martínez, por la calle Monserrate de Santurce, viajando de Norte a Sur, única dirección en que se permite el tránsito de vehículos en dicha calle. Al llegar frente a la casa núm. 556, el demandado estacionó el automóvil al lado izquierdo de la calle, entornó las ruedas delanteras, de modo que la parte trasera de la rueda izquierda delantera descansara contra el encintado de la acera, aplicó el freno de emergencia que era de pedal, apagó el motor del vehículo, cerrando la ignición ('the ignition locked'); y salió del automóvil para entrar en la casa de Biascoechea.

Aproximadamente veinte (20) minutos después el demandante, señor Rafael Martínez Mattei, estacionó su vehículo en la misma calle que es una empinada con un pronunciado declive —a alguna distancia detrás del vehículo de los demandados, pero en el lado opuesto de la calle. En cuanto a la forma en que el demandante estacionó su carro—si puso el freno de emergencia o viró las gomas delanteras o apagó el motor—no hay prueba alguna. Inmediatamente el demandante se desmontó y se dirigió al baúl del automóvil, en la parte trasera.

Súbitamente el automóvil de los demandados se fue hacia atrás, chocó contra la parte izquierda delantera del vehículo del demandante, causando que el mismo se deslizara también hacia atrás. El demandante fue golpeado por el parachoques trasero de su automóvil contra el de un tercer automóvil allí estacionado. Ambos vehículos—el del demandante y el de los demandados—fueron detenidos por este tercer automóvil.

Según el testimonio prestado por el joven Rafael Montañez— a quien el Tribunal ha concedido absoluto crédito, por la firmeza y consistencia de su declaración—estando hablando Biascoechea,

en el balcón de la casa de éste, sintió un ruido seco, metálico, como el producido por un muelle o freno que se safa, cuyo ruido llamó su atención. Al virar su cuerpo, Montañez observó que su automóvil se movía hacia atrás. Corrió hacia éste para tratar de detenerlo, pero antes de que pudiera alcanzarlo ya el automóvil había chocado contra el del demandante.

Como resultado del accidente el demandante, quien contaba 70 años de edad, sufrió una fractura a través del tercio superior de la fíbula de la pierna derecha; fractura no desplazada, sino de alineación aceptable; tuvo su pierna enyesada durante 46 días y estuvo caminando, ayudado por muletas, por 3 meses en total. Los daños físicos y angustias mentales del demandante, de ser compensables, los estimaríamos en la suma de $5,000.00."

El tribunal de instancia no hizo referencia a determinados hechos que fueron claramente establecidos por la prueba, o sea que (a) tanto el recurrido Montañez Martínez, como su acompañante José Biascoechea, estuvieron contestes en que la conversación en el balcón de la casa de éste duró de 15 a 20 minutos y (b) fue durante esa conversación que el recurrido oyó "un golpe de metal como si se hubiera soltado la emergencia" y al virar vio que su vehículo "está empezando a irse para atrás"; que en los momentos en que iba a ocurrir el choque él llegó a abrir la puerta de su vehículo y "Miré así y puse el freno para que no se fuera a ir más para atrás y tenía la emergencia suelta"; que enseguida puso en movimiento el motor del automóvil hasta que "lo dejé en medio de la calle . . . le puse la emergencia y lo apagué"; la explicación que dio Montañez Martínez de por qué se fue su vehículo hacia atrás fue "porque está en pendiente . . . Se le soltó hacia atrás la emergencia y lo impulsó hacia atrás."

El tribunal de instancia concluyó que la inferencia de negligencia que autoriza la doctrina de *res ipsa loquitur* fue rebatida por el recurrido al demostrar que "tomó todas las precauciones posibles para que su automóvil quedase bien estacionado."

■ La doctrina de *res ipsa loquitur* es de aplicación si concurren los siguientes requisitos: (a) el accidente debe ser de tal naturaleza que de ordinariamente no ocurra en ausencia de negligencia de parte de alguna persona; (b) debe ser causado por una agencia o instrumento dentro del control exclusivo del demandado; (c) y no puede haber sucedido debido a la acción involuntaria alguna o negligencia del demandante.

Veamos, pues, si aquí se cumplen con los criterios ya señalados para que surja la inferencia de negligencia que la doctrina autoriza.

El segundo criterio es el que tenemos que examinar ya que la prueba demuestra el cumplimiento con las otras dos.

Según los hechos probados en *Knippenberg* v. *Windemuth*, 238 A.2d 915 (Md. 1968), el apelante estacionó su automóvil a la orilla de una calle que tenía una pendiente pronunciada. A los pocos segundos oyó un golpe seco (*thump* o *thud*) y observó que su vehículo abandonó su estacionamiento, giró a la derecha al centro de la calle y se pasó a la orilla opuesta y se adentró en la propiedad de los recurridos hasta llegar junto a su casa. Al confirmar la sentencia en este caso condenando al apelante a pagar los daños sufridos por los recurridos, dijo el tribunal que "la mera ocurrencia de un accidente en que está envuelto un vehículo de motor o una lesión ocasionada por un vehículo no hace aplicable la doctrina de *res ipsa loquitur* pero si el accidente o lesión es uno que ordinariamente no ocurriría en ausencia de la negligencia del operador del vehículo, la doctrina puede entrar en juego.

"Cuando el vehículo y su manipulación están bajo el control único de su operador y el accidente es uno que ordinariamente no ocurriría a menos que el vehículo estuviese defectuoso o manipulado negligentemente, surge una inferencia de negligencia suficiente para sostener el peso de la prueba del demandante ante el jurado y para sostener un dictamen en contra del demandado y requiere que el demandado asuma

entonces la obligación de ofrecer prueba. *El demandado no puede evitar el impacto de la doctrina de res ipsa loquitur por la mera contradicción del testimonio del demandante o por él aseverar que tomó toda precaución para evitar el accidente . . . .*" (Énfasis nuestro.)

En *Lewis* v. *Wolk*, 228 S.W.2d 432 (Ky. 1950), el recurrido testificó que él estacionó su carro cuesta abajo como media hora antes del accidente y que al hacerlo viró las ruedas hacia el encintado de la acera y aplicó el freno de emergencia. Dos mecánicos que examinaron el carro testificaron que este freno estaba en buenas condiciones y que si se aplicaba mantenía el vehículo en su lugar. El recurrente testificó que súbitamente oyó que el vehículo se ponía en movimiento y antes de poder salirse de su camino éste lo arrolló y siguió cuesta abajo. No había nadie en el vehículo en ese momento. El tribunal concluyó que la doctrina de *res ipsa loquitur* era de aplicación. Indicó que el tribunal de instancia asumió que cuando el demandado produjo evidencia sustancial de que no había cometido ningún acto de negligencia, la reclamación del demandante había quedado destruida. Al revocar, dijo el tribunal que la inferencia de negligencia puede destruirse por prueba de que el accidente se debió a otra causa o causas sobre las cuales el dueño del vehículo no tenía control o por una causa interventora; que la presunción o inferencia de negligencia no se destruía con prueba tendente a demostrar lo contrario, es decir, que el dueño o conductor del vehículo no cometió acto alguno de negligencia. Dijo el tribunal que "porque el demandante tenía control de la instrumentalidad y el accidente no hubiera ocurrido ordinariamente sin negligencia, la cosa misma es prueba positiva de la culpa del demandado"; que *"hay casos excepcionales donde la evidencia del demandado demuestra tan claramente la ausencia de negligencia que una sentencia a su favor puede ser sostenida. Esta regla es aplicable cuando se demuestra que una causa*

*interventora, independiente y eficiente, inició la cadena de los sucesos";* (Énfasis nuestro.) ; que en este caso el recurrido tenía que explicar qué causa, que no fuera su negligencia al estacionar su automóvil, causó el que éste abandonase el encintado y arrollase al apelante. *El hecho de que paró el vehículo, aplicó los frenos y viró las ruedas hacia el encintado no contesta satisfactoriamente la pregunta que surge de la inferencia.*

En *Estridge* v. *Estridge,* 333 S.W.2d 758 (Ky. 1960), el tribunal dictaminó que "Se requiere de un conductor que estaciona su automóvil en una pendiente u otro lugar riesgoso un grado mayor de cuidado de que no puede moverse sin intervención de otra fuente." *Holliday* v. *Hartford Accident & Indemnity Co.,* 38 So.2d 235 (La. 1949) ; *Calla* v. *Mandella,* 72 N.W.2d 755 (Wis. 1955) ; *Pellard* v. *D'Allessandro,* 73 N.E.2d 590 (Mass. 1947) ; *Hudson* v. *Bennett,* 115 N.E.2d 20 (Ohio 1952) ; Blashfield, *Automobile Law and Practice,* Vol. 3, sec. 116.4; *Restatement, Law of Torts, 2d,* sec. 328D, Comment (f).

■ Es cierto que el tiempo que el vehículo estuvo estacionado antes de moverse por sí mismo es un factor en la determinación de si su conductor fue negligente al estacionarlo. *Johnson* v. *Jackson,* 226 A.2d 883 (Md. 1967) ; 16 A.L.R.2d 979, 993. En el caso ante nos el automóvil se movió por sí mismo durante una conversación que duró de 15 a 20 minutos. Este breve período, de incierta duración, no es tan sustancial que impida en derecho inferir la negligencia del conductor. *Riley* v. *Larson,* 432 P.2d 775 (Idaho 1967) ; *Landrum* v. *U.S. Fidelity Guaranty Co.,* 151 So.2d 701 (La. 1963).

■ El testimonio del joven Montañez al efecto de que cumplió con el requisito de inmovilizar el vehículo con el freno y con la rueda delantera más cerca a la acera diagonalmente hacia el borde del incintado u orilla de la vía pública (Ley de Vehículos y Tránsito, 9 L.P.R.A. sec. 1013), no establece

por sí solo la ausencia de negligencia de su parte. El freno apareció suelto luego del accidente y, además, de haberse puesto al estacionar el vehículo y zafarse al rato, el carro debió permanecer inmóvil si es que se colocó la rueda delantera más cercana a la acera diagonal hacia el borde del encintado. Indudablemente el conductor en este caso no cumplió con uno de estos dos requisitos ya que no estableció razón otra alguna para que el vehículo se moviese por sí mismo.

El caso de *Hermida* v. *Feliciano*, 62 D.P.R. 55 (1943), es claramente distinguible pues la explosión de la rueda trasera del vehículo que ocasionó que el aro se desprendiese y lesionase al menor apelante constituyó un accidente desgraciado no atribuible a *negligencia alguna del conductor*. Stevenson, *Law of Negligence in the Atlantic States*, Vol. 2 sec. 634; *Injury by Parked Automobile*, 16 A.L.R.2d 979; A.L.R.2d Supplement.

Con respecto a la cuantía de los daños, el tribunal de instancia, aunque desestimó la demanda, dijo que "Los daños físicos y angustias mentales del demandante, de ser compensables, la estimaríamos en la suma de $5,000."

El lesionado era una persona de 72 años que ganaba un promedio de $100 mensuales aparte del Seguro Social, como comisionista en la compra y venta de café. Sufrió la fractura de la fíbula de la pierna derecha que requirió el enyesarla durante 46 días. Caminó con muletas por tres o cuatro meses. En cuanto a sus sufrimientos testificó que "Fígurese de cama tanto tiempo sufriendo dolores tremendos que pasaba estuve a punto de volverme loco; ya le digo hasta a un hijo le dije 'tráeme un revólver para pegarme un tiro porque esto es una cosa horrorosa.' " Sufrió dolores "en la pierna y todavía sufro no puedo apenas pisar, voy caminando por la calle y siento que se me duerme la pierna . . . ya no puedo viajar, guío un carro y a la media hora se me aduerme la pierna." En vista de lo expuesto, estimamos los daños sufridos por el recurrente en la suma de $7,500.

*Debe revocarse la sentencia dictada en este caso por el tribunal de instancia en 14 de abril de 1966 y, en su lugar, dictarse otra condenando a los recurridos a pagar al recurrente $7,500 por concepto de los daños sufridos por éste más $500 de honorarios de abogado en adición a las costas.*

El Señor Juez Presidente y el Juez Asociado Señor Blanco Lugo no intervinieron. El Señor Juez Santana Becerra se inhibió.