SAVOY, Judge.
This is a companion suit to Judy Ann Menard v. State Farm Mutual Automobile Insurance Company et al. (La.App., 3 Cir., 1968), 212 So.2d 141, and to Menard et al. v. State Farm Mutual Automobile Insurance Company et al. (La.App., 3 Cir., 1968), 212 So.2d 141, decided this date. They are suits for damages' for personal injuries and property damage arising out of the same two-car collision.
The accident giving rise to these suits occurred approximately at 1:15 A.M. on the morning of May 28, 1964, on Louisiana Highway 94, commonly known as the Breaux Bridge-Lafayette Highway, the point of impact being just east of the Cypress Island Road, also known as Louisiana Highway 353 where said highway forms a “T” intersection with Louisiana Highway 94. A vehicle being driven by Curtis Prejean and insured by State Farm Mutual Automobile Insurance Company ran into the rear end of another vehicle which was being pushed in Prejean’s lane of traffic after stopping on the highway due to motor failure. This second vehicle was owned by Overton Menard, was insured by American Employers Insurance Company, and was being operated by his daughter, Judy Ann Menard, who had with her as passengers her minor sister, Faye Menard, and Linda Faye Ardoin.
Linda Faye Ardoin brought suit against both drivers and their respective insurers. Both insurers filed general denials, and in addition, State Farm filed an exception of no right or cause of action based on a release allegedly executed in their favor by Miss Ardoin. In the alternative, both insurers pleaded that if they were found guilty of negligence that the judgment in favor of Miss Ardoin should be reduced by one-half, State Farm pleading the concurring negligence of the driver of the Men-ard vehicle, and American Employers claiming that Miss Ardoin had executed the release in favor of State Farm.
Judy Menard brought suit for her injuries against Curtis Prejean and his insurer, State Farm, both of whom denied any degree of negligence and pleaded in the alternative contributory negligence on her part in stopping the vehicle on the highway.
Overton Menard, the owner of the vehicle which was hit from the rear, brought suit against Curtis Prejean, State Farm and American Employers, both individually and as administrator of the estate of his minor daughter, Faye Menard, to recover for the damages to his vehicle and for the damages incurred by his minor daughter. *137 General denials were filed and alternative pleas for contribution were made by both insurers. Faye Menard was married prior to the trial of the case and was substituted as party plaintiff on her own behalf.
The exception of no right or cause of action filed by State Farm because of the alleged release was heard by the trial court and referred to the merits. After a trial on the merits, Judy Menard and her insurer, American Employers, were absolved of any negligence. The exception of no cause or right of action filed by State Farm was maintained, and the claim of Miss Ardoin against State Farm was dismissed, the court holding that the release executed by her was valid. The trial court found the defendant, Curtis Prejean, guilty of negligence and rendered judgment in favor of Overton Menard and Faye Menard against Prejean and State Farm in the amount of $333.95 for medical expenses, and $2,000.00 for the injuries. Judgment was further rendered in favor of Judy Menard in the amount of $4,000.00 for her injuries, $350.00 for lost wages, and $1,042.30 for medical expenses.
Miss Ardoin appealed from the ruling of the trial court, contending that the trial judge erred in not finding Judy Menard guilty of negligence, and that the trial judge erred in sustaining the exception of no right or cause of action when the evidence showed the release was obtained when Miss Ardoin was in the hospital under sedation. Curtis Prejean and State Farm appealed from the ruling of the trial judge, contending that Judy Menard was guilty of negligence although they agreed with the trial court’s upholding of the validity of the release signed by Miss Ardoin. Faye Menard filed an answer to the appeal of Prejean and State Farm, contending that her award should be increased from $2,000.00 to $15,000.00. Judy Menard likewise filed an answer to the appeal of Pre-jean and State Farm, contending that her injuries justified an increased award of $6,000.00.
We shall at this time examine the facts surrounding the accident.
The weather was clear on the night of the accident. There was a shell shoulder on the side of the road of sufficient magnitude to park a car without endangering traffic. The speed limit at the time was 45 miles per hour, and the road was straight for some six-tenths of a mile for traffic proceeding toward Lafayette on Louisiana Highway 94. Miss Judy Menard was driving her father’s Sahara gold and white Vauxhall with her sister, Faye, and a friend, Linda Faye Ardoin, as passengers. The three young ladies had been at the Lima Lounge on the highway for an entertaining evening when they decided to return to Lafayette around 1:00 A.M. After getting a push to start the Vauxhall, they headed for Lafayette. The car drove fine at first, but after they proceeded for some distance, the car started bucking and slowing down to a speed in the vicinity of 15 miles per hour. Judy continued to nurse the car along the highway at a slow rate of speed when suddenly the vehicle came to a stop in the highway. Judy exited from the car and asked her sister to help her push the vehicle off the highway and onto the shoulder. After pushing the vehicle a very short distance, Faye complained of back trouble so she sat in the car while Linda Faye Ardoin got out to help push. About that time Miss Ardoin noticed the Prejean vehicle coming and told the others to watch out, at which time Judy jumped into the car and started pumping the brakes to signal the approaching vehicle as to the Vauxhall’s immobility. Within a short time thereafter the Prejean vehicle slammed into the rear end of the Vauxhall inflicting the damages which started this suit.
Counsel for Miss Ardoin places great stress upon LSA-R.S. 32:141, which provides as follows:
“A. Upon any highway outside of a business or residence district, no person shall stop, park, or leave standing any vehicle, whether attended or unattended, *138 upon the paved or main traveled part of the highway when it is practicable to stop, park or so leave such vehicle off such part of said highway, but in every event an unobstructed width of the highway opposite a standing vehicle shall be left for the free passage of other vehicles and a clear view of such stopped vehicles shall be available from a distance of two hundred feet in each direction upon such highway.
“B. The provisions of this Section shall not apply to the driver of any vehicle which is disabled while on the main traveled portion of a highway so that it is impossible to avoid stopping and temporarily leaving the vehicle in that position. However, the driver shall remove the vehicle as soon as possible, and until it is removed it is his responsibility to protect traffic.
“C. The driver of any vehicle left parked, attended or unattended, on any highway, between sunset and sunrise, shall display appropriate signal lights thereon, sufficient to warn approaching traffic of its presence.”
He then cites the cases of Smith v. Henry, (La.App., 2 Cir., 1962), 147 So.2d 416, writs refused, 243 La. 1013, 149 So.2d 766; Guillory v. Farmers Automobile Insurance Company, (La.App., 1 Cir., 1960), 120 So. 2d 84; and Bennett v. Lumbermen’s Mutual Casualty Company, (La.App., 2 Cir., 1965), 181 So.2d 442, as supporting his contention of negligence on the part of Judy Menard in stopping her vehicle on the highway in violation of LSA-R.S. 32:141. A reference to these cases will readily reveal that they involved situations other than the one with which we have here. In the Smith case, supra, plaintiff parked his vehicle halfway on U. S. Highway 80 at a point where the shoulders were only six feet wide in preparing to execute a U-turn when he was hit from the rear by the defendant. The court held that Smith was guilty of contributory negligence in attempting to execute the turn at the place where he did rather than finding a place which would not endanger other vehicles.
In the Guillory case, the vehicle belonging to the defendant’s insured was parked partially on the south shoulder of Louisiana Highway 10 at which point the shoulder was nine feet wide with the rear of the automobile projecting onto the highway about three or four feet. The vehicle had become disabled while the driver was attempting to execute a turning maneuver when the engine stopped. The court found the driver to be negligent taking into consideration, among other things, the fact that the vehicle had evidenced trouble stalling several times before and was parked in the highway with no lights burning.
The Bennett case, supra, revealed that the defendant’s automobile was stopped on the traveled portion of U. S. Highway 167 for the purpose of repairing a flat tire. The vehicle had just entered the highway from a plant entrance where the tire could have been easily changed. In none of these three cases did the vehicles come to stop suddenly due to an unexpected motor failure.
We feel that the trial judge correctly resolved the issue of negligence on the part of Judy Menard, stating:
“When Judy started the drive home to Lafayette the car began to give trouble, it began ‘bucking’ as she describes it. She stated that she was trying her best to get it back to Lafayette, which is quite understandable. Certainly no one would relish (particularly three young girls) being stranded on the highway at night. It is very seriously contended by very able counsel that since Judy knew or should have known that the car was going to stop she should have pulled off onto the shoulder of the highway before the engine quit. It is true enough and hindsight now shows that it would have been better for her to have driven off of the highway the minute the engine gave *139 warning of malfunction, but I do not believe failure to do this was negligence which can be considered the proximate cause of this accident.”
The record reveals and it is uncontra-dicted that the girls took immediate steps to try to remove the vehicle from the highway and might have succeeded in pushing it onto the shoulder prior to the accident had it not been for the recurring backache of Faye Menard. When it became apparent that an automobile was heading towards the disabled vehicle, Judy jumped back into the vehicle and started pumping the brake lights in an effort to warn the approaching car.
Miss Ardoin urges on appeal that we conclude that the release executed by her was not valid since it was executed while she was in the hospital and under sedation. Although there was a slight conflict in the evidence on this matter, we feel the trial judge correctly resolved this factual issue. The record reveals that Miss Ardoin sought out Mr. Franques, a member of the Lafayette Bar, to assist her in drafting a partial release, and that he was of the impression that he was actually representing her and in fact did place a restrictive release in the release executed by her to State Farm.
Turning to the question of whether Curtis Prejean was negligent in not observing the stalled vehicle and avoiding a collision, we conclude that he was so negligent. Prejean testified that he had drunk three or four beers prior to the accident, was driving with his headlights on dim, did not apply his brakes and collided with the Vauxhall. However, he contends that the taillights of the Menard vehicle were not on, and that this is why he was unable to avoid the collision. John Louviere and Samuel Roberts, occupants of a vehicle which passed the Menard vehicle just prior to the wreck, testified that the taillights were burning when they passed the girls. Officer Moss of the State Police testified the headlights of the Vauxhall were burning, and that the taillights were heavily damaged when He arrived on the scene. Faye Menard testified that when she got out of the vehicle to push she observed the taillights burning. Judy Menard testified that she started pumping the brake lights when she saw the approaching vehicle. We think Prejean was negligent in not observing the stalled vehicle on the straight road when taking into consideration the above as well as the fact that the vehicle was being driven at a speed of 15 miles above the speed limit, there were no oncoming vehicles with headlights on, there were no skid marks or any other evidence to indicate that he was keeping a careful watch on the highway in front of him.
Our last consideration deals with the amount of the awards made to Judy and Faye Menard.
Judy was awarded $4,000.00 for her pain and suffering, $350.00 for lost wages, and $1,042.30 for medical expenses. We are here concerned only with whether the sum of $4,000.00 is appropriate under the facts of this case. Judy received a cut on her left thigh, on her back, and also on her forehead with no resultant functional disability, according to the testimony of Dr. Zerben Bienvenu. Dr. Palmintier found a lesion of the thigh measuring three inches by five inches and which left a scar approximately six or seven inches by one-third to one-half inch, but which would be hidden by ordinary street clothes. Dr. Schneider, an orthopedic surgeon in Lake Charles, examined Judy after she complained of pain in her mid-back and lower dorsal area. He was of the opinion that she sustained a spraining injury to the lower spine which was symptomatic and causing the discomfort. He felt there would be no residual disability beyond four months. On his second examination, he found a persisting atrophy of the left thigh and felt there was a ten per cent disability because of this atrophy.
Faye Menard received an award of $2,000.00 for her injuries which consisted *140 of contusions of the right shoulder and back, abrasions of the knees and a tender nodule on her right arm. She was not hospitalized but did remain in bed for some six weeks. Dr. Schneider also examined Faye and found she had sustained mild compression injuries to the seventh and eighth dorsal vertebrae which he thought would resolve itself in about six months with no residual disability. When he examined her eight months later he thought she had recovered.
After examining the record we do not find the awards in this case to be either excessive or inadequate.
For the reasons assigned the judgment of the district court is affirmed at appellants’ costs.
Affirmed.